279 So.2d 364 (1973)
Nancy Louise TAYLOR, Appellant,
v.
Larry Harold TAYLOR, Appellee.
No. 72-103.
District Court of Appeal of Florida, Fourth District.
June 22, 1973.
*365 Louie W. Barnard, Satellite Beach, for appellant.
William C. Irvin, Cocoa Beach, for appellee.
OWEN, Judge.
On appeal from a final judgment of dissolution of marriage, the defendant-wife asserts that the trial court erred in relieving the plaintiff-husband of any obligation for either alimony or child support.
The parties were married in August, 1969. At that time the wife was a 24-year old divorcee with a 5-year old son by her former marriage, and approximately four and one-half months pregnant by another man. She was unemployed and had no special training or skills, received no support or alimony from her former husband, and was being supported mainly by welfare benefits. The husband was a 28-year old enlisted man in the United States Navy who had never been married, but who, being fully aware of appellant's enceinte condition, expressed a willingness to marry her and be a father to her son and to her expected child.
After the marriage, the appellee-husband made the necessary arrangements through the Navy for appellant and her son to be listed as dependents by virtue of which status they were eligible for and received those benefits normally available to the dependents of military service personnel. On December 30, 1969, appellant's daughter, Heather, was born. The child was given the name Taylor, and the appellee-husband on this occasion conducted himself in the traditional manner of all proud new fathers by mailing birth announcements, giving away cigars, etc. However, three months later the parties permanently separated and in due course this suit was filed. Appellant conceded that she never felt any love for appellee but had married him primarily for financial security. Both appellant and appellee confirmed the fact that there had never been any sexual relationship between them.
In the final judgment the court made a finding that the marriage was irretrievably broken, the child, Heather, was conceived prior to the marriage, that the parties had never had sexual intercourse either before or during the marriage, that the natural father of the child was a person other than the appellee-husband, that the husband knew the wife was pregnant by another man at the time he married her, that the child, Heather, was born during the marriage, and that the husband had on occasion held himself out to be the father of the child. Upon these findings the court decreed the marriage dissolved, ordered the husband to pay certain arrearage in temporary *366 alimony and child support which had accrued, together with attorney's fees, but relieved the appellee-husband of any obligation to pay permanent alimony or child support.
Appellant first contends that the court erred in failing to adjudicate the appellee to be the acknowledged father of the child born during the marriage, and in failing to adjudicate the child to be a legitimate child and heir of appellee. The principal thrust of appellant's argument here is that by virtue of F.S. Section 731.29(1), F.S.A.,[1] the marriage of the parties rendered the child legitimate for all purposes. The fallacy of such argument lies in the fact that the statute refers to subsequent intermarriage of the [child's] parents, which means the child's natural parents. Appellee simply was not the natural father of the child born during the marriage. Appellant also contends that under this statute the appellee's conduct in causing his official Navy records to be changed reflecting appellant and her children as dependents was a sufficient acknowledgement in writing to comply with the statute. While it seems doubtful from the evidence that appellee signed any document in writing in the presence of a witness, such an act would at most only entitle the child to inherit from appellee, an issue which was not before the trial court.
Appellant next contends that the court erred in not requiring the appellee-husband to provide support for the child born during the marriage. Appellee was not the natural father of the child, a fact so irrefutably established that it is idle to speak of any presumption to the contrary. Appellee had not legally adopted the child as his own. Appellee had not contracted, either expressly or impliedly, to care for and support said child as his own beyond that period of time that he stood in loco parentis to the child by virtue of the marriage relationship to the child's mother. A man has no legal duty to provide support for a minor child which is neither his natural nor adopted child and for whose care and support he has not contracted. An exception to this is made in the case of one who stands in loco parentis to the child. 59 Am.Jur.2d, Parent & Child, Sections 88-90. Of course, the dissolution of the marriage between appellee and the child's mother terminated any relationship of loco parentis between appellee and the child. No one would suggest that after the marriage was dissolved, appellee had any obligation to support appellant's son by a previous marriage. The child born during the marriage stood in no different legal relationship to appellee than appellant's son.
Appellant also contends that it is inequitable for appellee to be relieved of the obligation of supporting the child because appellant relied upon his representations of support in entering into the marriage. Furthermore, appellant points out that by having entered into the marriage, she has lost the right to institute bastardy proceedings against the child's putative father, and hence the appellee should be estopped to deny his paternity. This argument is not without some appeal. However, with the exception of having lost this right of action, appellant clearly suffered no other detriment and, in fact, both she and her daughter received certain tangible and intangible benefits from the marriage. Except for the argument advanced on appeal, there is otherwise no basis in the *367 record to conclude that appellant had any intention to pursue the bastardy action and that she forbear doing so in reliance upon any representation made by appellee. It appears to be nothing more than an afterthought.
Appellant's final point is that the court erred in failing to order the appellee to pay permanent alimony. We find no abuse of the trial court's discretion in this respect. The marriage lasted approximately two and one-half years. During this period, the wife and her two children received food, shelter, clothing, medical care and other necessities from appellee. In exchange, appellee enjoyed the benefits of a platonic but not always serene family relationship during the eight months of the marriage in which he and appellant shared a common domicile. When the marriage was dissolved, appellant was none the worse for the experience and for practical purposes still had everything that she had brought to and contributed toward the brief marriage.
The judgment is affirmed.
REED, C.J., concurs.
WALDEN, J., concurs in part, dissents in part with opinion.
WALDEN, Judge (concurring in part, dissenting in part):
I concur in the trial court decision concerning alimony.
I dissent as concerns the trial court treatment, approved by the majority here, accorded to the minor child, Heather, born in wedlock.
Section 61.052(4), F.S. 1971, F.S.A., provides that no judgment of dissolution of marriage renders the children of such marriage illegitimate. And now what happened to Heather?
As recorded and conceded, the bride was pregnant with Heather by another at the time of the marriage and the bridegroom, sexually impotent and with full knowledge of all the facts, expressed and acted out his willingness to marry her and be a father to the expected child. There is nowhere the slightest hint of fraud, deceit, or misrepresentation on the part of the bride and wife to be.
Heather was born on December 30, 1969, and just in passing, the husband acted like any normal father. He arranged for the wife's confinement, mailed birth announcements, passed out cigars, designated the child as a dependent with the Navy, sent his wife flowers and a congratulatory card, bestowed his name and bragged about the baby, and paid the hospital expenses and her support.
And now that the marriage has fallen on unhappy days the husband wants to renege  on his sole motion  and be relieved from his agreement (express and implied) as concerns paternity and financial responsibility. In his 1971 Complaint, he alleges:
"4. No children have been born as issue of this marriage, however, the Defendant was pregnant at the time the parties hereto were married and on or about December 30, 1969 HEATHER E. TAYLOR was born to the Defendant. The plaintiff was not the father of the said HEATHER E. TAYLOR."
and prays "B. That the plaintiff be adjudged not to be the father of Heather B. Taylor."
The appealed judgment specifically found that the husband was not the father of Heather and relieved him forever from payment of "* * * any child support for the minor child, Heather Elizabeth Taylor." Semantics aside for the moment, if this adjudication recorded in the official records and memorialized in the Southern Reporter doesn't render Heather illegitimate contrary to the statute, I do not know what would or how it could be more effectively done.
*368 I do not know all the satisfactions and considerations that flowed from one to the other when the bargain was struck and thereafter; but I am satisfied that they were substantial and mutual. Compellingly, the wife in return for the husband's promise to be a father and support the child gave up for herself and the child the right to initiate a bastardy action against the natural father under Section 742.011, 742.021, F.S. 1971, F.S.A. By accepting his offer and promises and marrying him, the wife gave up the possibility of finding another who might have proven more steadfast and humane under the circumstances. She further gave up sexual relations and the possibility of conceiving additional children while married to the husband. As to the bridegroom, it could have been a monumental consideration as concerns his "ego" for him, in his condition, to marry and become husband to a young woman and ostensibly sire a child. Then, too, he could have derived an intangible satisfaction as a "Good Samaritan" in rescuing the wife from her predicament.
Despite the unconditional ipse dixit to the contrary, it being to the effect  if the baby ain't his, he don't have to be a daddy and pay for it if he don't want to  I feel that the case law and natural justice of the cause require that this husband should not be relieved of responsibility to Heather.
Gustin v. Gustin, (1958) 108 Ohio App. 171, 9 Ohio Ops.2d 204, 161 N.E.2d 68, is precisely on point factually and the court there concluded:
"By the marriage the defendant husband deprived the plaintiff wife of the right to institute bastardy action against the natural father, Section 3111.01, Revised Code; Miller v. Anderson, supra. He himself has voluntarily assumed the burden instead, thereby profoundly altering the status, rights and responsibilities of others.
"He must, therefore, continue to meet his obligation, onerous as it may now seem to him."
In State v. Shoemaker, (1883) 62 Iowa 343, 17 N.W. 589, a bastardy action contains apt pronouncements. The basic facts were:
"(1) The child was begotten by the defendant, and was born on the thirteenth day of August, 1882; (2) prior to its birth, on the first day of June, 1882, the mother, the prosecutrix, married another man, named Getz; (3) at and before the marriage Getz was informed by the prosecutrix that she was enceinte. Her condition was apparent from her appearance. Upon these facts the district court held that plaintiff could not recover, and directed the jury to return a verdict for defendant."
The appellate court affirmed, saying:
"One who marries a woman known by him to be enceinte is regarded by the law as adopting into his family the child at its birth. He could not expect that the mother upon its birth would discard the child and refuse to give it nurture and maintenance. The law would forbid a thing so unnatural. The child receiving its support from the mother, must of necessity become one of her family, which is equally the family of the husband. The child, then, is received into the family of the husband, who stands as to it in loco parentis... . When this relation is established the law raises a conclusive presumption that the husband is the father of his wife's illegitimate child ... A husband who, in the manner we have indicated, has put himself in loco parentis of a bastard child of his wife, ought not to be permitted to disturb the family relation and bring scandal upon his wife and her child by establishing its bastardy after he has condoned the wife's offense by taking her in marriage."
In Miller v. Anderson, (1885) 43 Ohio St. 473, 3 N.E. 605, it was said:
"So we say here: By the act of Riddlemoser in marrying the complainant, *369 he most solemnly and effectively acknowledged the unborn child to be his own. He knew her condition, and every honorable sentiment would require him to marry her, if the child was his, and to avoid her if it was not. He chose to marry her, and thus legitimate her issue and make it his own. The act would have made the child heir to his estate; and, being made so by his act, can the inhuman mother by her uncorroborated testimony make it a bastard? We have a statute (Rev.St. § 4175) providing that when a man has children by a woman, and afterwards intermarries with her, such issue, if acknowledged by him as his children, are deemed legitimate, and will then have all the rights of heirship and inheritance of children born in wedlock. Suppose a woman has children believed by a man, who afterwards marries her, to be his, that he contract marriage with the mother, and fully acknowledge the children to be his own,  can they be bastardized by proving somebody else begot them, and, especially, can their mother bastardize them, and take from them the rights they acquired by the marriage of their mother with the man that acknowledged them to be his own?"
In addition to public policy, decency and the mentioned authorities, I feel there are manifold legal vehicles upon which to bottom a decision legitimatizing this child and providing for her continued support from the person who knowingly and voluntarily assumed the father's mantle. Without prolonged discussion, the principles of estoppel, contract, waiver, ratification and loco parentis are worthy of note and adequate for the purpose. Finally, I feel that the husband's acknowledgments are adequate to establish paternity under the principles discussed in 4 Fla.Jur., Bastards, § 12.
A point is made that the husband didn't legally adopt the child. Well, well, well  ! How does one go about adopting a child born to his lawful wife during wedlock?
Another argument compares the child in question with the wife's other child born to her during a former marriage. Rhetorically, it is asked why should the husband be obliged to support the child when he has no obligation to his step-son. Without overworrying it, the stepson's parentage and legitimacy was already established at the time of the marriage and further his natural father continued to have the legal support obligation. Hence, as to the stepson, the husband here would have no obligation short of adoption  a course open to him there, but not as to the child born of wedlock.
The proposition causing affirmance here can perhaps be stated with more precision. The husband is not the biological father of the child born to his wife during wedlock, ipso facto and regardless of full prior knowledge of all events and all equitable circumstances, the husband can unilaterally at any time, with or without cause, disavow paternity and absolve himself of all financial obligation to and on account of the child.
If the majority rule is a good one (and I think it is intolerable), it must stand up across the board under scrutiny, evaluation and divers circumstances. Would we reach the same result if the husband's decision to bastardize came when the child was fifteen years of age and unaware of his paternal situation? Suppose the husband literally threw the child out of the house and home after fifteen years as he could do under the majority view  and the child was adjudicated a delinquent or dependent? The husband could just blandly disclaim responsibility and leave the court powerless to provide juvenile relief or remedy, at least from the purported father.
Finally, as an illustration, since the fact of being born in wedlock adds no cement or bearing on the situation, it would necessarily follow that the husband could proclaim the child's illegitimacy at any time without the necessity of a dissolution of marriage proceeding. Thus, he could bastardize a child born during marriage and *370 remain married to the mother (if she would stand still for it).
When the legitimacy and support of a child rests unilaterally in the hands and at the whim of the husband, a child's world would never be safe. His standing and status would be a day by day thing with the child powerless in the premise and the whole decision all the days of the child's life would be in jeopardy. Talk about the sword of Damocles!
It would perhaps not be an overwide statement to suggest that many marriage partners come to the union with some disability, some closet skeleton, some background item of which they are not overly proud. If (contrary to the suggestion of some newspaper advice columnists), they confess the situation to their intended prior to marriage, it seems just as a matter of grace and good public policy that, if the marriage thereafter takes place, the "sin" should be evermore laid to rest and not resurrected at the pleasure of the offended party. But not here. Mr. Taylor played father as long as it suited him and when it didn't he raised his wife's confession of premarital pregnancy and used it as a basis for walking away from Heather and his obligations to her.
In summary, I feel the husband is absolutely estopped to deny paternity and support to this child. I further offer that the husband voluntarily put himself in loco parentis and as stated in the Shoemaker case, supra, he "... ought not to be permitted to disturb the family relation and bring scandal upon his wife and her child by establishing its bastardy after he had condoned the wife's offense by taking her in marriage."
I would reverse and remand this discussed portion of the judgment with instructions to declare the husband the father of the child and to require payment of child support dependent upon the child's needs and the husband's abilities.
NOTES
[1] "731.29 Illegitimate child as heir.  (1) Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have intermarried, in which event such illegitimate child shall be deemed legitimate for all purposes."