## IN RE: THE MARRIAGE OF FIEDLER

### Case No. 86-1266-CA JHS

Twentieth Judicial Circuit, Charlotte County

November 9, 1987

### APPEARANCES OF COUNSEL

**John M. Hathaway** for husband.

**Michael P. Haymans** for wife.

### OPINION OF THE COURT

JAMES H. SEALS, Circuit Judge.

### *FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE WITH OPINION*

This cause came on for non-jury trial, and the Court having heard

all of the evidence in the case, and having considered the applicable law and the arguments of counsel, and being otherwise fully advised in the premises, the Court finds as follows:

1. The Court has jurisdiction of the parties and subject matter of this action.
2. The marriage between the parties is irretrievably broken.
3. The husband, although not the natural father of Sean Anthony Fiedler, born to the wife on June 1, 1975, has a legal duty to support said child.
4. A reasonable amount of child support is $25.00 per week.

## OPINION OF THE COURT

There were three issues involved in this case, one of them, the dissolution of the marriage, was simple; the second, the husband's liability for child support, was very difficult; and the final issue was the amount of child support. This opinion focuses on the second issue only.

The Court feels compelled to write this opinion because the result herein appears to be in direct conflict with the Second District Court of Appeal's opinion in the case of *Albert v. Albert,* 415 So.2d 818 (Fla. 2d DCA 1982). For reasons expressed *infra,* the Court believes the result in *Albert* should not control the result here. Instead, the Court finds the opinion of the Fifth District Court of Appeal in *Marshall v. Marshall,* 386 So.2d 11 (Fla. 5th DCA 1980); and Judge Walden's dissent in *Taylor v. Taylor,* 279 So.2d 364 (Fla. 4th DCA 1973) to be more persuasive. These three cases, *Taylor, Albert,* and *Marshall* form the doctrinal basis of a non-parent spouse's duty to support children "of the marriage". A fourth case, *Hippen v. Hippen,* 491 So.2d 1304 (Fla. 1st DCA 1986) is of some importance because it discusses the aforementioned three cases, but is of little value otherwise because of its distinguishable facts.

All three cases hold to some extent that the doctrine of equitable estoppel can impose liability on such non-parent spouses for child support after dissolution of marriage even though said spouses had only an *in loco parentis* responsibility during the marriage. In *Taylor* the majority hints at the possibility of an estoppel, but rejects it on the facts of the case. In his dissent, Judge Walden argues eloquently that there is, and should be in Florida, a stronger doctrinal basis for liability on the part of these non-parent spouses. The next case chronologically is *Marshall,* which firmly holds that equitable estoppel can create liability for support in the absence of parentage or contract. Then comes *Albert* which recognizes the holding in *Marshall,* but on

the facts finds no basis for an estoppel and follows *Taylor*. Finally *Hippen* appears to stress the temporary nature of *in loco parentis* responsibilities, but the facts of that case easily support a flat rejection of the equitable estoppel argument. (The children there were born from affairs the wife had during the marriage while the husband was serving in the Navy.)

Therefore, although the First, Second and Fourth District Courts of Appeal gravitate toward the notion that child support is only an *in loco parentis* duty in the absence of parentage or contract, Judge Walden's dissent and the Fifth District Court of Appeal, in the opinion of this Court, properly place emphasis where it should be: on the unfortunate children themselves who do not know their real fathers, but who do have surrogate fathers whose comfort and support they stand to lose upon divorce from their mothers.

The conflict within the three main cases can be partially reconciled by an important distinguishing fact. In *Taylor* and *Albert,* the subject child was either an infant or a toddler, therefore little parent-child bonding occurred. In *Marshall* there was a longer bonding period, approximately five years, between the "father-person" and the child. In this case the husband, wife and child lived together as a family, more than less, for *12 years*! In fact, up until the day before the trial the child believed the husband was his father. If parental bonding has any bearing in these kinds of cases, and the Court believes it should be a prominent one, it certainly applies to this case.

That brings up another important question in these cases which is who is the "victim" for estoppel purposes? The majority in *Taylor* and the *Albert* court say it is the wife. Judge Walden's dissent and the *Marshall* court say it is the child. This Court believes that the victim of detrimental reliance is first and foremost the child, and secondarily the mother/wife. Just as a dissolution of marriage should never dissolve parenthood, it should not necessarily dissolve a bond between a man and a child he helped to raise. Furthermore, child support is a right of the child. The custodial parent is technically only a guardian of that right and the custodian of the funds. Consequently, a child may become both emotionally attached to and financially dependent upon his mother's husband, and it could be a severe emotional and psychological blow to the child to allow this "father-person", at *his* option, to sever all ties that the child may not want broken. Once the financial tie is broken it is highly improbable that the ex-husband will remain in contact with the child, but the bond might be preserved if he continues to assist with the child's support.

There are two other reasons why equitable estoppel applies to the

**73**

particular facts of this case. First, the husband here did something much the same as the husband did in *Marshall*. He intentionally falsified documents to permit a birth certificate to be administratively amended to reflect himself as the father of the child, so that the child could have his name at school enrollment time. In *Marshall* the court emphasized that this act not only gave the real father an almost absolute defense to any action for support but it also officially, though not legally, altered the relationship of record to one of parent and child.

The second and more forceful reason for applying equitable estoppel is what happened at the time of the child's birth. *Taylor, Marshall* and *Albert* all involve children born during the marriage. This case is different. The child was born shortly before the marriage but only after a very significant event took place. The wife, then 16 years old, was preparing to permanently sever her parental rights and surrender the child to an adoption agency. While in the hospital she was told by the husband to bring the child home or there would be no wedding. The wife testified that this was "an answer to her prayer", she abandoned the adoption idea, and decided to keep and raise the child with her future husband. That event altered the course of this child's life. Instead of placement in the home of loving adoptive parents, he went to the home of his natural mother and her husband, who for all intents and purposes at that time wanted to raise the child as his own. That, to say the least, is a substantial change in position. To allow the husband 12 years later to leave the child with no obligation to support him is one enormous detriment to that child's welfare, and it all happened because his mother, while a teenager, relied on this man's insistence that they raise her newborn child together. This Court cannot think of a better reason to apply the doctrine of equitable estoppel.

Although minute distinctions can be made between the leading cases on this issue, the Court still believes that the law is in conflict and that this case will be viewed as being in conflict with a case within its own appellate district. Although the *Albert* case is not "on all fours" with this case, it is close enough to it that a conservative application of stare decisis would probably demand identical results. However, this Court sincerely believes that strict adherence to a rule of parentage or contract is harmful to families and children, and therefore contrary to the public policy of this state. This Court does not suggest a total retreat from the holding in *Taylor* and *Albert* in favor of an almost irrebuttable presumption of de facto adoption. It does urge though, on a case by case basis, that the interests of children and the change of

74

position in their lives be carefully considered, and not just the wife's, in determining whether the duty to support a child should continue after divorce. If some jurisdictions are now willing to estop a cohabiting adult from denying an obligation to support a former "significant other" (viz., pay palimony), then no less should be done for a child who received support and nurture from a non-parent spouse in his family.

Finally, this Court wholeheartedly concurs with Judge Walden's dissent in *Taylor,* and incorporates it by reference into this opinion, with the hope that one day the appellate courts will frame a harmonious rule of law favoring that position.

### FINAL JUDGMENT

It is therefore ORDERED AND ADJUDGED as follows:

1. That the bonds of marriage between the petitioner, Lori Lee Fiedler, and the respondent, Paul Anthony Fiedler, are dissolved because the marriage is irretrievably broken.

2. The husband, Paul Anthony Fiedler, has a legal duty to support the wife's child, Sean Anthony Fiedler, the same as if said child were the natural child of the husband.

3. The husband shall pay as and for support of the minor child, Sean Anthony Fiedler, the sum of $25.00 per week, beginning the first Friday following the entry of this Final Judgment, and on each and every Friday thereafter until the child reaches the age of 18, marries, dies, or otherwise becomes self-supporting, whichever occurs first. Said payments shall be made, along with the applicable fee, through the office of the Support Department of the Clerk of the Circuit Court in and for Charlotte County, Florida, for disbursement to the wife. Said payments shall be made either in cash, certified or cashier's check, or money order.

4. The Court reserves jurisdiction of the parties and subject matter of this cause to enter any further orders as are deemed just and necessary, including visitation.

DONE and ORDERED at Fort Myers, Lee County, Florida, this 9th day of November, 1987.