HARRIS, Chief Judge,
dissenting.
I respectfully dissent.
The putative natural father filed a petition for writ of certiorari from an order by the paternity court requiring him to submit to an HLA test. The basic issue in this case is whether the trial court has the authority to proceed to establish the paternity of a child when that child’s paternity has been previously established by an acknowledgment of paternity and such establishment has not been set aside in a manner that binds the interest of the child.
Section 742.011, Florida Statutes provides:
Determination of paternity proceedings; jurisdiction: Any woman who is pregnant or has a child, or any man who has reason to believe that he is the father of a child, or any child may bring proceedings in the circuit court, in chancery, to determine the paternity of the child when paternity has not been established by law or otherwise. (Emphasis added.)
Under this statute, therefore, one is entitled to only one established paternity at any given time.
In this case, pursuant to section 742.10, Florida Statutes, in 1988 the mother’s then husband, Randy Warren Berry, (even though he knew he was not) established himself to be the father of this child by executing an acknowledgment of paternity.[1] This acknowledgment was recognized and relied on by the State as evidenced by the issuance of an Amended Certificate of Birth naming Mr. Berry as the father. Paternity of this child was thus established “by law or otherwise.”
*323 Mr. Berry, who married the mother in 1984, acted as the child’s father for over eight years. However, when the child was eleven years old, the “acknowledged parents” divorced. They stipulated that Mr. Berry was not the “biological” father of the child.[2] Based on this stipulation, the divorce judge ruled that Mr. Berry was not the biological father and ordered the State to correct the amended birth certificate by deleting any reference to Mr. Berry.[3] But the stipulating parties and the divorce judge missed the point. Regardless of whom the biological father might be, Mr. Berry is at law the legal father. The divorce judge apparently believed that the acknowledgment of paternity only imposes obligations on those biological fathers who execute them. But fatherhood is a broad enough concept to encompass not only those who east the seed but also those who, having full knowledge, undertake the obligation of tending the seedling.
In Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA 1980) this court held:
Based on [the acknowledgment of paternity], an amended birth certificate was issued on which the husband was shown as the child’s father. Neither party disputes that the affidavits were untrue and that the husband was not the natural father. The conclusions of the trial judge, as well as the arguments of the parties, evidence a basic misconception of the issue involved. Both the parties and the judge viewed this proceeding as a contest between the husband and the wife. However, the real party in interest is the child.
# ¾: ⅜ ⅜; ⅜ ⅜;
As noted above, the paramount concern is for the welfare of the child. The husband is presumed to have known the legal consequence of his actions. Since parents are legally obligated to support their minor children, the husband accepted this support obligation by acknowledging paternity. A change in parenthood should not be taken lightly nor should the “parent” be able to so easily divest himself of all responsibility upon the termination of the marriage. As Judge Walden noted in his dissent in Taylor v. Taylor, 279 So.2d 364 (Fla. 4th DCA 1973):
When the legitimacy and support of a child rests unilaterally in the hands and at the whim of the husband, a child’s world would never be safe. His standing and status would be a day by day thing with the child powerless in the premises and the whole decision all the days of the child’s life would be in jeopardy.
We agree with the concern expressed by Judge Walden. We feel that in this instance, the . best interests of the child would not be served by allowing the husband, now that he has the benefit of five years of hindsight, to so easily avoid the consequences of his action.
I would hold that the divorce judge, in order to vitiate the previously established paternity, must not only find that Mr. Berry was not the biological father of the child but also that the paternity status established by the acknowledgment of paternity was somehow void — or at least voidable. Should the consequences of an adoption, even a “cheap” adoption, be so easily ignored?
It might be urged that since the paternity established by the acknowledgment of paternity was not as a result of an “adjudicatory proceeding”, it merely created a rebuttable presumption of paternity. (§ 742.10, Fla. Stat. (1991). Be that as it may, it still represents an establishment of paternity and, until rebutted, prevents the paternity court from proceeding.
*324 I submit that the “rebuttable presumption” provision contained in section 742.10, Florida Statutes was not intended by the legislature to amend the requirement set out in section 742.011 that the paternity court should proceed only if there is no outstanding determination of paternity. Rather, the acknowledging parent should first prevail in setting aside the previous determination of paternity as a condition precedent to proceeding in the paternity court.
The parents in this case appear to agree with this analysis because they attempted to rescind the acknowledgment of paternity in the divorce court. The forum may have been appropriate; the procedure was not. It should take more to avoid the consequences of executing an acknowledgment of paternity, knowing full well it is a false acknowledgment, than merely changing one’s mind. The divorce court, in absolving Mr. Berry of any parental responsibilities under his affidavit filed pursuant to section 742.10 and section 382.013(6)(b) improperly recognized a “fingers crossed” defense: “Sure I swore to it but I didn’t mean it; since my fingers were crossed [I’ve changed my mind], I’m not bound by the obligations created by my oath.”
Unless we accept the fact that the obligations created by acknowledging paternity are terminable at the will of the acknowledging parent, then there must be some independent basis for seeking to rebut the presumption of paternity other than a desire to be free from responsibility. For example, if the “father” asserts that he executed the acknowledgment of paternity because he was led to believe that he was, in fact, the biological father, then mistake or fraud might be a basis to contest the presumption. However, one who executes this acknowledgment knowing that he is not the father should be estopped — as a matter of law and public policy — from escaping the consequences of parenthood merely because he is not the biological father. And the issue of withdrawing from parenthood should be tried in a forum where the interest of all affected persons, including the child, are fairly represented.
The ruling by the divorce court that Mr. Berry is not the biological father of the child is, standing alone, simply inadequate to rebut the presumption of paternity created by the acknowledgment of paternity. Furthermore, such ruling is not binding on the child and is, therefore, insufficient to permit the paternity court' to proceed. To permit it to do so would be extremely poor public policy. It would render any obligation created by the acknowledgment of paternity conditioned on the future whims of the parent. Paternity itself, the very legitimacy of the child, would be subject to negotiation and agreement based on what the parents might find or believe to be in their best interest.
The child, pursuant to section 742.011, through a next friend, could have sought the initial determination of paternity had the mother not done so. Once established, the child has a vested interest in having that paternity acknowledged and honored. The child’s legitimacy cannot be so cavalierly bargained away.
Since the child was not a party to (nor represented in) the divorce action, the divorce judge’s holding relative to paternity does not affect the child’s interests.[4] This child has a father and that father is Randy Warren Berry.
I would grant the writ.

.The mother testified that this was done for three reasons:
1. so the child would have a father;
2. to improve the relationship between her son and Mr. Berry; and
3. to accomplish a “cheap” adoption.

. It appears to me, however, that the mother, on her own, can no more "stipulate” away the child’s legitimacy than she can stipulate away the child’s lawful right of support from Mr. Berry. In this instance, she did both.

. Indeed, the parties to the dissolution established the illegitimacy of this child in the most unusual way. On an ore-tenus motion, the court determined that the acknowledging father was not the father and changed the name of a non-party (the child) and ordered another nonparty (the State) to amend the child’s birth certificate. This was done in what is called a Final Judgment of Name Change entered in the dissolution action. In this manner, Mr. Berry was permitted to "divorce” his child — a child who was not even a party to the action.

. The child should still have standing (to be asserted by a guardian or next friend) to chal- ■ lenge the divorce court ruling and seek support from Mr. Berry.