677 So.2d 343 (1996)
MMMA, Petitioner,
v.
Susan JONELY, as Next Friend of JMDM, etc., Respondent.
No. 95-2918.
District Court of Appeal of Florida, Fifth District.
June 28, 1996.
Michael R. Walsh, of Michael R. Walsh, P.A., Robert L. Young, William D. Palmer and Charlotte L. Warren, of Carlton, Fields, *344 Ward, Emmanuel, Smith & Cutler, P.A., Orlando, for Petitioner.
Jerri A. Blair, of Blair & Reid, Tavares, and George H. Russ, of Sellar, Sewell, Russ & Saylor, P.A., Leesburg, for Respondent.
PER CURIAM.
The defendant below, MMMA (hereinafter "petitioner") has petitioned this court to issue a writ of common law certiorari to quash the circuit court's orders which denied petitioner's Motions (1) to Dismiss for Lack of Capacity by Plaintiff, Susan Jonely to Maintain this Action for and on Behalf of the Minor Child, JMDM; (2) to Dismiss Verified Petition for Lack of Subject Matter Jurisdiction; (3) to Dismiss for Failure of the Verified Petition to State a Cause of Action; (4) to Dismiss or Decline Subject Matter Jurisdiction by Reason of Inequitable and Reprehensible Conduct on the Part of the Plaintiff; (5) to Quash Plaintiff's Notice of Hearing Calling up Plaintiff's Motion to Appoint Guardian Ad Litem and Psychologist; and which (6) granted Susan Jonely's Motion for the Appointment of a Guardian Ad Litem.
This Florida proceeding follows from a unanimous decision of the Tennessee Supreme Court, issued on March 20, 1995. Because it provides the factual background for the proceedings below and because it is important to be familiar with the opinion, it is reproduced here in its entirety:
This case presents for review the competing claims of the mother of an infant and a couple [George and Janice Bond] who have custody of and have petitioned to adopt the child. The record requires that the decision of the Court of Appeals denying the mother custody be reversed and that the petition for adoption be dismissed.
The child was born in May 1987. The mother was awarded custody of the child and her two brothers when she was granted a divorce from their father. Because of the child's medical problems, the mother was not able to place her in a day care facility with her other two children. Believing that she could not take proper care of the child, the mother asked the adoptive couple, who had cared for other children for short periods of time, to assume temporarily the responsibility of caring for the child, who then was eight and one-half months old.
One month later, in March 1988, the adoptive couple filed a petition in the juvenile court seeking custody of the child. The mother, under the mistaken belief that the purpose of the petition was to authorize medical care for the child and being unaware that the adoptive couple was seeking legal custody, joined in the petition, which was granted by the juvenile court. However, three days later, the mother, having learned the real purpose of the juvenile court proceedings, joined in a petition filed by her mother, the child's maternal grandmother, seeking custody of all three of the children. The child's paternal grandparents also filed a petition seeking custody of the children. The parental rights of the father were terminated upon entry of a judgment by default.
Because a stay order was entered by the Court of Appeals, the adoptive couple has had physical custody of the child since February 1988, except for a brief period in 1989 when the child was in the custody of the paternal grandparents, even though legal custody of the child was awarded to the mother in 1991.
The court proceedings in this case include various petitions, motions, and hearings in the juvenile, circuit and chancery courts of Anderson County and the Court of Appeals, involving the mother, the maternal grandmother, the adoptive couple, the paternal grandparents, and the Department of Human Services. This tangle of court proceedings demonstrates the imperfection of the design of the judicial system for the effective and efficient disposition of cases involving children. This case is a classic example of the fragmentation of legal and factual issues among several courts causing the delay and, at least, a partial denial of justice.
However, the only proceedings that need be noted on this appeal are the findings and judgment of the chancery court, entered on August 3, 1992 from which an appeal was taken to the Court of Appeals, and the decision of the Court of Appeals *345 rendered on December 10, 1993. The ultimate issues on which the case was heard in the trial court were the adoptive couple's insistence in their petition for adoption that the mother had abandoned the child and the mother's insistence on her petition that she was entitled to exclusive custody.
The trial court found that the mother had not abandoned the child and dismissed the petition for adoption. With regard to custody, the trial court stated:
I am confronted with making a determination of where this child should be placed when evidence convinces me that the mother has not sufficiently prepared herself to parent this child and I have also been provided evidence which convinces me that the [adoptive couple's] home is not an appropriate home in which this child should reside.
The court awarded custody to the mother, conditioned upon her receiving appropriate training in parenting and psychological counseling. The Department of Human Services was given temporary custody pending the mother's compliance with those conditions.
The court of Appeals concurred in the trial court's finding that the mother had not abandoned the child, but reversed the trial court's award of custody, finding that the child's best interest would be served by her remaining in the custody of the adoptive couple.
Resolution of this case does not require consideration of the issue of the child's best interest. The trial court and the Court of Appeals made a concurrent finding regarding the determinative issue abandonment. They found there is no clear and convincing evidence that the mother has demonstrated a conscious disregard or indifference to her parental obligations. See Ex parte Wolfenden, 49 Tenn.App. 1, 349 S.W.2d 713 (1959); Adoption of Bowling v. Bowling, 631 S.W.2d 386, 389 (Tenn.1982). The record supports that concurrent finding of law and fact.
The adoptive couple insists that the best interest of the child may require that custody be awarded to a non-parent even though the natural parent has not been found to be unfit. As explained in Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993) and Nale v. Robertson, 871 S.W.2d 674 (Tenn. 1994), that argument is untenable as both a violation of statutory and constitutional law, as well as the common law in Tennessee.
Tennessee courts have historically held that,
a parent is entitled to the custody, companionship, and care of the child, and should not be deprived thereof except by due process of law. It is a natural right, but not an inalienable one. The parents are trusted with the custody of the child upon the idea that under the instincts of parental devotion it is best for the child.
Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn. 1993) (quoting State Ex rel. Bethell v. Kilvington, 100 Tenn. 227, 236, 45 S.W. 433, 435 (1898)). In Nale v. Robertson, 871 S.W.2d 674, 680 (Tenn.1994), the court stated:
This Court found in Davis v. Davis, 842 S.W.2d 588, 600 (Tenn.1992), that "there is a right of individual privacy guaranteed under and protected by the liberty clauses of the Tennessee Declaration of Rights." This constitutional right of privacy includes parental rights.
In light of this right to privacy, we believe that when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit.

Hawk v. Hawk, 855 S.W.2d 573, 577 (Tenn.1993); see also Broadwell v. Holmes, 871 S.W.2d 471 (Tenn.1994).
Therefore, in a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.
The case is remanded to the trial court for entry of an order whereby custody will *346 be transferred to the mother unconditionally. The trial court will determine and monitor an expeditious schedule for transferring physical custody of the child to the mother and require the cooperation of all parties.
The costs are taxed against the adoptive couple, George Bartlett Bond, Jr. and Janice C. Bond.
In re Adoption of Female Child, 896 S.W.2d 546 (Tenn.1995). In April 1995, pursuant to the supreme court's mandate, the Tennessee trial court ordered that, in the future, MMMA would be the one to determine what contact, if any, the child would have with the Bonds. The court also went so far as to enjoin the Bonds and their agents from in any way intruding upon or "interfacing" with MMMA's family. MMMA promptly brought JMDM to live with MMMA in Florida.
On May 18, 1995, less than thirty days after the Tennessee order was entered, a verified petition in the Orange County, Florida Circuit Court was filed by someone named Susan Jonely, who is alleged to be "an adult acquainted with the facts surrounding the minor child, placement of the minor child with MMMA and fears and concerns of the minor child about placement with MMMA." Apparently, she is a resident of Tennessee. She also apparently believes herself to be outside the scope of the Tennessee court's injunction.
Her verified petition sought appointment of a guardian ad litem and a psychologist to (1) determine the best interest and welfare of the minor child, (2) to litigate issues which allegedly had previously not been litigated or considered in the courts of the State of Tennessee, and (3) to investigate the allegations about the child's well-being. On or about this same date, separate motions regarding the appointment of a psychologist and guardian ad litem were also filed. The orders petitioner seeks to have reviewed arise from the denial of their several motions to dismiss or abate this entire action and various interlocutory orders, including the appointment of a guardian ad litem.
Respondent offers the following as the purpose of the litigation:
Petitioner has sought to determine if this child is being harmed as was predicted by the psychological experts in Tennessee because of her isolation from her friends and former foster family in Tennessee. This petition was filed only after respondent learned that the child was placed in Florida and was being isolated from her friends and former foster family in Tennessee, and the child was not being provided with cards and letters which had been sent by friends and family from Tennessee....
The only thing that she has requested at this point is that the court appoint a guardian ad litem to determine if this child is receiving therapy, and is being provided with a nurturing environment that will avoid the trauma that the experts in Tennessee predicted.
Her further expressly stated purpose is to cause the courts of Florida to consider de novo and undo the Tennessee Supreme Court's decision on the grounds that it is "repugnant" to the law of Florida.
We grant the writ. The lower court has no jurisdiction to conduct such a proceeding, which has not been brought pursuant to chapter 39, 61 or 63. See Casbar v. Dicanio, 666 So.2d 1028 (Fla. 4th DCA 1996); Taylor v. Kennedy, 649 So.2d 270 (Fla. 5th DCA 1994), review denied, 659 So.2d 1085 (Fla. 1995); Meeks v. Garner, 598 So.2d 261 (Fla. 1st DCA 1992), Kennedy v. Kennedy, 559 So.2d 713 (Fla. 5th DCA 1990); Fleming v. Brown, 581 So.2d 202 (Fla. 5th DCA 1991); McCaskill v. McCaskill, 477 So.2d 36 (Fla. 2d DCA 1985); cf. Waters v. Waters, 578 So.2d 874 (Fla. 2d DCA 1991).
To permit an "interested person," outside the procedures authorized by Florida Statutes, to have court appointed guardians and psychologists monitor someone else's child and report to the court, presumably with an end of ordering the child to have visitation with or custody transferred to "psychological parents" who themselves have no standing, no rights under Florida law and who indeed are apparently barred by court order from involving themselves with the child at all, and, for good measure, to have the Florida circuit court reverse the Tennessee Supreme Court's decision that this child's natural *347 mother is entitled to custody and control of her child is clearly a departure from the essential requirements of law.
These proceedings clearly cause "irreparable harm" since the principal purpose of the litigation itself is the conducting of discovery, monitoring of the child and supervising MMMA's parenting.[1] It is unclear what relief the lower court could afford in any judgment that would be consonant with Florida law. Perhaps, indeed, there is no plan to enter a judgment, merely monitor this child with guardians and psychologists until she is eighteen. MMMA and her family have no adequate remedy on appeal, if the lower court proceedings ever do terminate.
It may be that the Bonds would make better parents to this child than her own mother; it may also be that this child would rather be with the Bonds, and is suffering from their loss in her life, but in Tennessee, and in Florida, the courts have limited authority to effect a change in parents or interfere in the parent/child relationship. During eight years of litigation in Tennessee, the Bonds failed to convince the courts either that this child had been abandoned or that returning the child to the natural mother would be detrimental to the child. This parent and child, now in Florida, are like any other mother and daughter in the eyes of Florida's courts and can be subject to no special interference by third parties unless and until the legislature authorizes it, as it has done by enacting Chapter 39 for the protection of the child. If this respondent can do what has been allowed in this case, the same could be done by any adult as to any child in Florida. While it appears that some believe this would be desirable, it is the legislature that must first be convinced.
We issue the writ and order the trial court to dismiss the proceedings below.
WRIT GRANTED.
DAUKSCH, GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Cf. Pesci v. Maistrellis, 672 So.2d 583, 585 (Fla. 2d DCA 1996).