736 So.2d 106 (1999)
Penny KAZMIERAZAK, Appellant,
v.
Pamela S. QUERY, Appellee.
No. 98-2854.
District Court of Appeal of Florida, Fourth District.
June 23, 1999.
Stephen R. Scarborough of Lambda Legal Defense and Education Fund, Inc., Atlanta, Georgia, and Elizabeth Stewart Brooker, Vero Beach, for appellant.
Margaret M. Anderson of Anderson & Winfield, P.A., Vero Beach, for appellee.
GUNTHER, Judge.
Appellant seeks reversal of the trial court's orders dismissing her petition for custody and denying her motion for temporary visitation of appellee's biological child. The trial court denied the requested relief on the grounds that appellant failed to state a cause of action and lacked standing to seek custody or visitation. We affirm.
Appellant argues that she is entitled to an evidentiary hearing to establish that she is a "psychological parent" of appellee's biological child. As a psychological parent, she contends that she has parental status equal to the appellee, the biological mother, which gives her standing to seek custody or visitation of appellee's child over appellee's objection. In her petition *107 the appellant alleges that the appellee "may not be a fit and proper person to retain custody of the minor," and "it is in the best interests of the minor" that custody be granted to appellant. Appellant, however, does not seek relief under any statutory scheme nor does she allege that the child is suffering any demonstrable harm or that it will be detrimental to the child to deny her custody or visitation. Moreover, she does not contend that a psychological parent has any rights recognized at common law.
Initially, appellant's petition confronts a procedural hurdle in that she is not seeking relief pursuant to any statute. Under Florida law, to invoke the jurisdiction of the court, a non-parent may petition for custody or visitation of another's child under the statutory authority of Chapter 39, 61, or 63. See Russo v. Burgos, 675 So.2d 216, 217 (Fla. 4th DCA 1996); In re C.M. and F.M., 601 So.2d 1236 (Fla. 4th DCA 1992); MMMA v. Jonely, 677 So.2d 343, 346 (Fla. 5th DCA 1996). Chapter 39 allows a non-parent to file a petition for dependency. See § 39.404(1). Chapter 61 allows a grandparent, in certain situations, to obtain custody or visitation during a divorce proceeding. See § 61.13(2)(b)2.c., (7). Further, under chapter 63, a nonparent may petition for adoption without the consent of the biological parent upon proof the biological parent has deserted or abandoned the child. See § 63.072(1). Although, in the present case, the appellant's petition was not filed under any of the available statutory schemes, the appellant argues that, as a psychological parent, her status is equivalent to that of a biological parent, thereby allowing her to petition for custody of the child outside of an existing statutory scheme.
As a non-adoptive or non-biological parent seeking custody from a biological parent, the appellant would also appear to be faced with Florida's constitutional right of privacy. See Art. I, § 23, Fla. Const.; Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998). Our supreme court recently addressed the constitutional right to privacy as it applies to child rearing in Von Eiff wherein the issue was whether the statutory provision giving grandparents visitation after the death of a biological parent was constitutional. See Von Eiff, 720 So.2d at 510.
At common law, grandparents had no legal right to visit their grandchildren if the parent opposed visitation. See id. at 511. The Florida legislature, however, has enacted grandparent visitation legislation, creating statutory visitation rights for grandparents. See id. In Von Eiff, the supreme court considered the constitutionality of the grandparent's visitation rights, under section 752.01(1)(a), Florida Statutes (1997), which provides that the court shall give visitation to grandparents upon the death of a biological parent "when it is in the best interest of the minor child." See id. Concluding the statute was unconstitutional, the court reasoned that to justify state intervention, either through the legislature or the courts, into a parent's fundamental and constitutionally protected right of privacy, there must be a threshold showing of demonstrable harm to the child. See Von Eiff, 720 So.2d at 514-15. Following this threshold finding, a "best interests of the child" analysis should then be applied. See id.
In an attempt to circumvent the appellee's right of privacy, appellant argues that she falls within the sphere of those protected by Florida's right to privacy. She makes this argument on the theory that as a psychological parent she is the equivalent of a biological parent and thus, has the same protected privacy rights as the appellee.
In essence, appellant's sole argument is that once she establishes that she is a psychological parent to appellee's biological child, she is on equal footing with the appellee and no longer confronts the aforementioned impediments to seeking custody or visitation with the child. Thus, the issue in this case is whether, under *108 current Florida law, a psychological parent has the same rights as a biological parent.
This court has previously recognized the concept of a psychological parent. In support of her position, appellant relies on Wills v. Wills, 399 So.2d 1130 (Fla. 4th DCA 1981), wherein this court affirmed the trial court's order granting temporary visitation to a step-mother during a dissolution action. See id. at 1131. In awarding visitation, the trial court had determined that the step-mother was the psychological mother of the child. See id. Acknowledging contrary authority and without any supporting authority, this court affirmed the lower court and provided,
It seems to us that if an adequate record can be made demonstrating that it is in the child's best interest that such visitation be authorized the judge's discretion in the matter is sufficiently broad to allow him to authorize visitation with a non-parent. Certainly this type of visitation, contrary to the wishes of the custodial parent, should be awarded with great circumspection. But if the welfare of the child is promoted by such visitation and there is no other substantial interest adversely affected the trial judge should be allowed that latitude.
Id.
In the Wills opinion, this court's reasoning turns on the concept of the best interests of the child without explicitly resolving the question of the standing of the psychological parent to seek visitation. Significantly, no mention is made of the father's fundamental and constitutionally protected right of privacy.
Simmons v. Pinkey, 587 So.2d 522 (Fla. 4th DCA 1991), is cited by the appellant as evidence that this court has vigilantly protected the welfare of children of psychological parents. In Simmons, the minor child resided with a foster mother for thirteen years while the biological father was in prison for killing the biological mother. See id. at 523. While this court upheld the denial of the biological father's petition for custody of his minor daughter as well as the award of custody to the foster mother with reasonable visitation granted the father, it did so upon the trial court's application of the principle of the best interests of the child. In Simmons, this court adopted the trial court's decision that:
The standard which this Court applies is that standard enunciated in the recent Supreme Court case of In Re Guardianship of D.A. McW., 460 So.2d 368 (Fla. 1984). In that case the Supreme Court opined the fundamental concept roots in early common law that a natural parent has the right in the preservation of the natural family unit to a child born of natural parents, except when such custody should be determined to be detrimental to the welfare of a natural child. Also see In Re: Guardianship of D.A. Mc W., 429 So.2d 699 (Fla. 4th DCA 1983).
Id. at 524.
By adopting this language, the Simmons court recognized the biological parent's superior right except when custody would be detrimental to the child. Thus, in affirming the trial court's ruling, this court did so on the basis that awarding custody to the biological father would have been detrimental to the minor and not on the basis that the foster mother had the same status as the biological father. See id. at 524. Also, Simmons, like Wills, is resolved without addressing the father's privacy rights or expressly addressing the issue of the foster mother's standing.
Also relied upon by the appellant is Heffernan v. Goldman, 256 So.2d 522 (Fla. 4th DCA 1971), wherein custody was awarded to a step-mother despite the biological mother's petition for custody. See id. at 523. Affirming the award of the trial court, this court provided that "[i]t is not contrary to law to award custody of minor children to one other than the natural parent when to do so would be for the best interest and welfare of the children." Id. However, similar to Wills and Simmons, *109 the award of custody or visitation in this case was founded upon the "best interests of the child" rather than the status of the non-parent. Thus, the biological parent's right to privacy, as in the other cases cited by appellant, goes unresolved in our court's Heffernan opinion.
Although the above mentioned cases from this district have upheld custody and visitation awards to non-adoptive or nonbiological parents in the past, their holdings must be reconsidered in light of recent precedent. Since these cases were decided, our supreme court, citing the fundamental and constitutional right of privacy, has unequivocally reaffirmed adoptive or biological parents' right to make decisions about their children's welfare without interference by third parties. See Von Eiff, 720 So.2d at 514-15. Von Eiff stands for the proposition that the state cannot intervene into a parent's fundamental or constitutionally protected right of privacy, either via the judicial system or legislation, absent a showing of demonstrable harm to the child. See id. The grandparents in Von Eiff did not have a common law right, but rather were given a statutory right of visitation by the legislature upon establishing that such visitation would be in the "best interests of the child." See id. at 511. Our supreme court held this legislative interference in the family violated Florida's constitutional right to parental privacy because it did not require a showing of demonstrable harm to justify the state intervention. See id. at 514-15.
In this case, the appellant does not argue that as a psychological parent she has either a common law or statutory right to custody or visitation of the child. Rather, the appellant is urging this court to rely upon case law, decided prior to Von Eiff, to conclude that she has standing to seek relief on the grounds that she is a psychological parent with the same standing as the appellee. Although these earlier cases recognized the concept of a psychological parent and awarded custody or visitation to the psychological parent based upon the best interests of the child, they did so without addressing the issue of the biological or adoptive parent's fundamental or constitutionally protected right of privacy or expressly resolving the standing issue. Nonetheless, appellant wants this court to interpret these cases as creating an inference that psychological parents have rights equivalent to biological or adoptive parents. We conclude, however, that in light of Von Eiff, the cases cited by the appellant cannot be construed as giving a psychological parent rights equivalent to a biological parent.
Moreover, our sister courts have rejected the argument that a psychological parent has standing to pursue custody or visitation of another person's adoptive or biological child. In Taylor v. Kennedy, 649 So.2d 270 (Fla. 5th DCA 1994), the Fifth District rejected a claim for visitation made by an alleged "psychological parent" explaining,
The government of this state, exerting its will through the court system, has no authority to compel visitation between a child and one who is neither a parent, grandparent, nor great-grandparent. Visitation rights are, with regard to a non-parent, statutory, and the court has no inherent authority to award visitation. (Citations omitted.)
Id. at 271 (quoting Meeks v. Garner, 598 So.2d 261, 262 (Fla. 1st DCA 1992)). Further, a similar situation was presented to the First District in Music v. Rachford, 654 So.2d 1234 (Fla. 1st DCA 1995), wherein the parties were involved in a lesbian relationship, decided to have a child via artificial insemination, and when the relationship terminated the non-parent, claiming to be a "de-facto" parent, sought visitation and shared parental responsibility. See id. However, the First District rejected her claim that she was entitled to rights as a parent under Chapter 61. See id. at 1235.
With regard to appellant's loco parentis argument, this concept has arisen only in the context of a marital relationship. See *110 Albert v. Albert, 415 So.2d 818 (Fla. 2d DCA 1982); Taylor v. Taylor, 279 So.2d 364 (Fla. 4th DCA 1973). The Second District has provided,
We agree that one who stands in loco parentis to a child has an obligation of support. However, the dissolution of the marriage terminated any relationship of in loco parentis between the appellant and the child and accordingly terminated the obligation of support.
Albert, 415 So.2d at 820. Further, this court has concluded, "dissolution of marriage between appellee and the child's mother terminated any relationship of loco parentis between appellee and the child." Taylor, 279 So.2d at 366.
In sum, although this court has in the past recognized the concept of a psychological parent, in light of Von Eiff, we cannot construe these cases as holding a psychological parent is entitled to parental status equivalent to the biological parent. Furthermore, the concept of loco parentis has appeared only in the context of a marital relationship, and thus, is inapplicable to the present case. Without a status equivalent to the biological parent, the appellant, in the present case, lacks standing to seek custody or visitation of appellee's biological child against her wishes. Therefore, the trial court's dismissal of the appellant's petition for lack of standing was proper. Accordingly, we affirm.
AFFIRMED.
FARMER, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
As the majority notes, the landscape in this area of the law has changed since the adoption of Article I, Section 23 of the Florida Constitution. In my view, the privacy provision means that a stranger to the parent-child relationship cannot use the courts to interfere with that relationship except under clearly defined procedural pathways established by statute. Even a statute purporting to give visitation rights to a non-parent must satisfy the compelling state interest test, by requiring a showing of demonstrable harm to a child before intruding upon a parent's fundamental right. See Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998). A non-parent's lawsuit involving another's child is an intrusion of privacy. In this aspect of life so protected by the right of privacy, courts should not create poorly defined relationships such as "psychological parents," which then confer rights on the recipients of the label against a natural parent. A court's power to determine child-related issues should derive from its jurisdiction over dependency, juvenile, dissolution of marriage, or adoption proceedings.
In the case of Cone v. Cone, 62 So.2d 907 (Fla.1953), a grandmother moved to intervene in a post dissolution proceeding after the death of her daughter, the former wife in the proceeding. The court noted that the trial judge's jurisdiction derived from "the continuing jurisdiction of the court as to the welfare of the children" until "the children reach their majority." Id. at 909. Cone held that the court could exercise its jurisdiction to award primary custody of children to their maternal grandmother over their natural father. See Pittman v. Pittman, 153 Fla. 434, 14 So.2d 671 (1943) (awarding primary physical custody to maternal grandmother in divorce proceeding at request of mother). Similarly, Eades v. Dorio, 113 So.2d 232 (Fla. 2d DCA 1959), was a case where maternal grandparents petitioned in a divorce proceeding for custody of their grandchildren after the death of their daughter. In two cases from this court, it was the existence of a prior divorce action which gave the trial court jurisdiction over the children. See Wills v. Wills, 399 So.2d 1130 (Fla. 4th DCA 1981); Heffernan v. Goldman, 256 So.2d 522 (Fla. 4th DCA 1971).
Thus, in the line of cases following Cone, the court resolved the claims of relatives in the context of an existing proceeding. *111 Separate rights had not been conferred on the non-parents as a result of their relationship with the children. The continued vitality of this line of cases is questionable. It is likely that the right of privacy would preclude a court from making a decision such as the one in Cone, where custody was awarded to a grandmother over the father because "the welfare of the children would be best served by so doing." 62 So.2d at 909.
Even under the case law preceding the privacy amendment, Heffernan appears to have been wrongly decided. As the dissent in that case notes, the court awarded custody to a woman who had been the children's stepmother for six months, instead of their natural mother; those non-parents who had prevailed in prior cases were grandparents or stepparents, who had enjoyed longer, more significant relationships with the children. See Heffernan, 256 So.2d at 524 (Cross, J., dissenting). Wills was a case involving temporary visitation. I do not read that case as involving the creation of rights in the stepmother as a "psychological parent" apart from her rights as a party to a dissolution proceeding.
The real problem in this area is section 63.042(3), Florida Statutes (1997), which prevents someone like appellant from creating that type of legal relationship with a child that would confer legal rights and obligations. Neither this court nor the supreme court has ruled on the constitutionality of section 63.042(3) under the privacy amendment or the equal protection clause. State, Department of Health and Rehabilitative Services v. Cox, 627 So.2d 1210 (Fla. 2d DCA 1993), passed on the constitutionality of the statute, but that case does not appear to be the last word on the issue. An important factor driving the decision in Cox was the absence of any evidence in the record in support of the parties' positions.