NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SUSAN RUSSELL,                          )
                                        )
            Petitioner,                 )
                                        )
v.                                      )          Case No. 2D14-5540
                                        )
ELIZABETH A. PASIK,                     )
                                        )
            Respondent.                 )
                                        )
_____ )

Opinion filed October 14, 2015.

Petition for Writ of Certiorari to the Circuit
Court for Manatee County; Marc B. Gilner,
Judge.

Paul F. Grondahl of Paul F. Grondahl, P.A.,
Bradenton, for Petitioner.

Cristina Alonso and Jessica Zagier Wallace
of Carlton Fields Jorden Burt, P.A., Miami;
Michael P. Sampson of Carlton Fields
Jorden Burt, P.A., Orlando; and Ashley
Filimon of Ashley Filimon, P.A., Orlando, for
Respondent.

Elliot H. Scherker, Brigid F. Cech Samole,
and Jay A. Yagoda of Greenberg Traurig,
P.A., Miami, for Amici Curiae Florida's
Children First, Florida Youth Shine,
University of Miami School of Law Children
and Youth Clinic, Professor Naomi R. Cahn,
Donor Sibling Registry, and the National
Association of Counsel for Children.

Luis E. Insignares, Fort Myers; and
Elizabeth Lynn Littrell of Lambda Legal
Defense and Education Fund, Atlanta,
Georgia, for Amici Curiae Lambda Legal
Defense and Education Fund, National
Center for Lesbian Rights, Family Equality
Council, University of Florida Fredric G.
Levin College of Law Center on Children
and Families, Nova Southeastern University
Law Center Children and Families Law
Clinic, and Law Professors Paolo Annino,
Brion Blackwelder, Michael J. Dale, Nancy
Dowd, Shani M. King, and Barbara Bennett
Woodhouse.

VILLANTI, Chief Judge.

Susan Russell petitions this court for a writ of certiorari from the denial of her motion to dismiss Elizabeth A. Pasik's petition for timesharing. Because the trial court departed from the essential requirements of the law, we must grant the petition.

Russell and Pasik entered into a same-sex relationship in April 1998. At some point over the course of that relationship, the parties made the decision to start a family together. To that end, Pasik purchased donor sperm supplied by an anonymous donor with the intent that it would be used to impregnate both Russell and Pasik. Pasik also paid for both women to undergo artificial insemination. The two children who are the subject of Pasik's petition for timesharing were carried to term by Russell and born April 29, 2006, and February 11, 2008, respectively. Pasik herself carried two children to term, both of whom are the biological half-siblings of the children at issue. All four children share the last names of both Russell and Pasik.

The four children were raised by both women jointly as a family unit until the parties ended their relationship in April 2011. For two years following the termination of their relationship, Russell allowed Pasik visitation with her children and Pasik retained an active parental role in their lives, providing financial support and maintaining the children as dependents on her health insurance policy. However, beginning in November 2013, Russell refused Pasik visitation with her children. Pasik petitioned for timesharing with the children, claiming to be their de facto or psychological parent, and Russell moved to dismiss on the basis that Pasik did not have standing to seek visitation rights. At the hearing on the motion, the trial court found that "the unusual facts as set forth in the petition sufficiently set forth a cause of action" and denied Russell's motion. This petition followed.

To be entitled to certiorari relief, Russell must demonstrate "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004) (quoting Bd. of Regents v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)). The second and third elements are jurisdictional and thus must be evaluated first. Trucap Grantor Trust 2010-1 v. Pelt, 84 So. 3d 369, 371 (Fla. 2d DCA 2012).

Typically, certiorari will not be granted from a denial of a motion to dismiss because there is not a material injury that cannot be corrected on postjudgment appeal. See Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 354 (Fla. 2012) (citing Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097 (Fla. 1987), for the proposition that "an appellate court could not use a writ of certiorari to review an interlocutory order

- 3 -

denying a motion to dismiss or strike a claim for punitive damages because the petitioner would have an adequate remedy by way of appeal"). In the present case, however, Russell's claim meets the jurisdictional elements for certiorari. As the mother of the children with whom Pasik seeks timesharing, Russell has a constitutional privacy interest in the raising of her children, including determining with whom they are allowed to spend time, that the State would necessarily be interfering with by just allowing the case to proceed. See Belair v. Drew, 770 So. 2d 1164, 1167 (Fla. 2000) (approving of Williams v. Spears, 719 So. 2d 1236 (Fla. 1st DCA 1998), which granted certiorari in a case involving grandparent visitation rights because "the parents' constitutional right to privacy was affected 'by the very continuance' of the proceedings in the trial court"); Von Eiff v. Azicri, 720 So. 2d 510, 516 (Fla. 1998) (holding that parents had "a constitutional right of privacy in their decision to limit the grandparents' visitation with their child" that could not be infringed upon by unwarranted governmental interference). The State's interference with a constitutional right—here, the right to privacy—would ipso facto result in an injury that cannot be corrected on postjudgment appeal. See Citizens Prop. Ins. Corp., 104 So. 3d at 354 (comparing Belair with Martin-Johnson, Inc. to distinguish "the situation where a party was merely forced to continue with litigation and thus did not suffer 'irreparable harm' from those situations where an order violated a party's 'fundamental rights' and caused harm that could not be later remedied"). As such, we find that this court has jurisdiction. See Belair, 770 So. 2d at 1167; see also Joseph v. State, 642 So. 2d 613 (Fla. 4th DCA 1994); Clear Channel Commc'ns, Inc. v. Murray, 636 So. 2d 818 (Fla. 1st DCA 1994); Saracusa v. State, 528 So. 2d 520 (Fla. 4th DCA 1988), disapproved on other grounds, Doe v. State, 634 So. 2d 613 (Fla. 1994).

The final element of this court's ability to grant certiorari, requiring a departure from the essential requirements of the law, means "more than simple legal error; rather, it is 'a violation of a clearly established principle of law resulting in a miscarriage of justice.' " Trucap Grantor Trust 2010-1, 84 So. 3d at 371 (quoting Fassy v. Crowley, 884 So. 2d 359, 364 (Fla. 2d DCA 2004)).  If the trial court erroneously interprets or applies a controlling statute, then it violates "clearly established law." See Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890-91 (Fla. 2003).  Florida's rules regarding visitation and timesharing are governed by section 61.13, Florida Statutes (2014).  And "[b]y its explicit provisions," section 61.13 applies only to parents' visitation rights and does not extend to nonparents.  Wakeman v. Dixon, 921 So. 2d 669, 673 (Fla. 1st DCA 2006).  Several cases have applied this statute to hold that nonparents are not entitled to visitation.  See, e.g., O'Dell v. O'Dell, 629 So. 2d 891, 891 (Fla. 2d DCA 1993); Wakeman, 921 So. 2d at 673; Kazmierazak v. Query, 736 So. 2d 106, 109 (Fla. 4th DCA 1999); Music v. Rachford, 654 So. 2d 1234, 1235 (Fla. 1st DCA 1995); Meeks v. Garner, 598 So. 2d 261, 262 (Fla. 1st DCA 1992).  As such, Pasik's standing to petition the court for timesharing is dependent on her being a "parent" within the meaning of the Florida Statutes.

In evaluating whether Pasik is a parent, we first look to the language of her petition for timesharing.  "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues." See Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006).  In ruling on a motion to dismiss, the trial court must determine whether, assuming all allegations contained within the four corners of the petition are true, the petitioner would be entitled to the requested relief.  Meadows

Cmty. Ass'n v. Russell-Tutty, 928 So. 2d 1276, 1279 (Fla. 2d DCA 2006) (quoting Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So. 2d 175, 178 (Fla. 5th DCA 2001)).  In her petition for timesharing, Pasik alleged that she "is not the legal parent of the children," but instead claimed that she "is the 'de facto' or 'psychological' parent to both of the children."  Taking this assertion as true, Pasik's claim that she is entitled to timesharing depends on a finding that her status as a de facto or psychological parent is sufficient to confer standing as a parent to seek visitation.

As explained in the Fourth District's decision in Kazmierazak, prior cases have considered the role of the de facto or psychological parent in a child's life and actually held that the de facto or psychological parent had a right to visitation or custody.  736 So. 2d at 108-09 (citing Simmons v. Pinkey, 587 So. 2d 522 (Fla. 4th DCA 1991); Wills v. Wills, 399 So. 2d 1130 (Fla. 4th DCA 1981); Heffernan v. Goldman, 256 So. 2d 522 (Fla. 4th DCA 1971)).  However, as the court pointed out, these cases "must be reconsidered in light of recent precedent.  Since these cases were decided, our supreme court, citing the fundamental and constitutional right of privacy, has unequivocally reaffirmed adoptive or biological parents' right to make decisions about their children's welfare without interference by third parties."  Id. at 109 (emphasis added) (citing Von Eiff, 720 So. 2d at 514-15).[1]  It is this unequivocal distinction between "adoptive or biological parents" and others that Pasik would now have us look

---

[1]The Von Eiff decision recognizes that the State may interfere with the parent's right to privacy "when it acts to prevent demonstrable harm to a child."  720 So. 2d at 515 (quoting Beagle v. Beagle, 678 So. 2d 1271, 1276 (Fla. 1996)).  However, Pasik does not claim that Russell committed any conduct toward her children such that chapter 39, Florida Statutes (2014), could be implicated to support a standing claim or the court's involvement in Russell's constitutionally protected parenting decisions.

past in finding that the latter has the same rights as the former. But the law is clear: those who claim parentage on some basis other than biology or legal status do not have the same rights, including the right to visitation, as the biological or legal parents. See, e.g., Von Eiff, 720 So. 2d at 514-15; Wakeman, 921 So. 2d at 673; Kazmierazak, 736 So. 2d at 110; Music, 654 So. 2d at 1235; Taylor v. Kennedy, 649 So. 2d 270, 271 (Fla. 5th DCA 1994); Moore v. Trevino, 612 So. 2d 604, 609 (Fla. 4th DCA 1992); see also Swain v. Swain, 567 So. 2d 1058, 1058 (Fla. 5th DCA 1990) ("There is no such thing [as a psychological parent] recognized in law. Only natural and adoptive parents have a legal duty to support minor children."). And because the trial court could have only made its standing determination on the basis of Pasik being "the 'de facto' or 'psychological' parent to both of the children," as she claimed to be in her petition for timesharing, it clearly departed from the essential requirements of the law by finding that Pasik had standing.

Pasik argues on appeal that because Russell invited Pasik to raise the children as a united endeavor, Russell waived her right to privacy as it relates to allowing Pasik visitation rights. However, it is unclear how this argument was raised in the pleadings, if it was at all.[2] Further, even if Pasik had properly raised this issue below, we are uncertain that it would be sufficient to overcome the lack of standing. See generally Richardson v. Richardson, 766 So. 2d 1036, 1043 (Fla. 2000) (holding that a divorced mother did not waive or abandon her right to privacy in raising her child

---

[2]In the petition for timesharing, Pasik asserts that she has a due process right to parent the children under the United States Constitution before alleging that Russell waived her right "to parent." There is no allegation that Russell waived her right to privacy as guaranteed by the Florida Constitution.

when she allowed the child to be raised by the paternal grandparents on a temporary basis while she worked and obtained a college degree); Forbes v. Chapin, 917 So. 2d 948, 953 (Fla. 4th DCA 2005) (finding that the father of a child did not waive his right to privacy by entering into an agreed order for grandparent visitation rights); see also Brookhart v. Janis, 384 U.S. 1, 4 (1966) (holding that there is a presumption against the waiver of constitutional rights and that the party claiming waiver must clearly establish that the waiver was intentional). In any event, Pasik cannot now rely on waiver to overcome the hurdle of standing.

Pasik next argues that her due process rights as a parent are being infringed upon by the refusal of visitation. Pasik correctly asserts that the act of assuming parental responsibilities and actively caring for a child is sufficient to develop constitutional rights in favor of the parent. See In re Adoption of Baby E.A.W., 658 So. 2d 961, 966-67 (Fla. 1995). Indeed, parents who are involved in the process of raising a child most certainly have a protected and fundamental due process right in being a parent. See Lehr v. Robertson, 463 U.S. 248, 261 (1983). However, as the supreme court made clear in D.M.T. v. T.M.H., 129 So. 3d 320 (Fla. 2013), it is the biological connection between parent and child that "gives rise to an inchoate right to be a parent that may develop into a protected fundamental constitutional right based on the actions of the parent." Id. at 338 (citing Baby E.A.W., 658 So. 2d at 966-67). When, as in the present case, there is not a biological connection between petitioner and child and it is a nonparent that is seeking to establish legal rights to a child, there is no clear constitutional interest in being a parent. See id. (noting that its decision, which granted the biological, egg-donor mother parental rights over a child that was born by her same-

sex partner, was based on facts "completely different from cases involving nonparents seeking to establish legal rights to a child" (citing Beagle v. Beagle, 678 So. 2d 1271 (Fla. 1996))); see also § 39.01(49), Fla. Stat. (2014) (defining a parent as "a woman who gives birth to a child and a man whose consent to the adoption of the child would be required"). Thus, Pasik's argument must fail.

We are not unsympathetic to Pasik's cause or her desire to visit with the children that she helped raise over the course of several years. Likewise, we understand the importance of the children being able to visit with someone who, for all intents and purposes, they have considered to be a parent from the time they were born. However, if the definition of a parent is to be expanded to fit facts such as those in this appeal, when a constitutional infirmity is not claimed or involved, then a policy change of this magnitude must be instituted by the legislature, not the courts. See L.D. v. Fla. Dep't of Children & Families, 24 So. 3d 754, 756 (Fla. 3d DCA 2009) (citing Meeks, 598 So. 2d at 261; Fischer v. Fischer, 544 So. 2d 1079 (Fla. 2d DCA 1989)).

We also note that the events of this case all occurred prior to the Supreme Court's decision in Obergefell v. Hodges, 135 S. Ct. 2584 (2015), which held that same-sex couples have a constitutional right to marriage, and the Northern District of Florida's decision in Brenner v. Scott, 999 F. Supp. 2d 1278 (N.D. Fla. 2014), which struck down Florida's ban on same-sex marriage. According to Florida state policy at the time of Russell and Pasik's relationship, the two women could not have been lawfully married in the State. See Art. I, § 27, Fla. Const.; § 741.212, Fla. Stat. (2011). Likewise, the fact that they resided together in the same residence as a family unit for several years prior to the expiration of the relationship did not confer on the parties any special legal status.

See § 741.211, Fla. Stat. (2011) (holding that common-law marriages are not recognized in the State of Florida). Because this issue is not before us, we decline to comment on whether, had the parties been married when the children at issue were born, this would have been sufficient to grant Pasik standing to seek visitation. But see O'Dell, 629 So. 2d at 891. But regardless of her marital status, Pasik still could have made the decision to adopt the children, a decision that would have arguably guaranteed her the rights of a parent that she now seeks. See § 63.172(1)(c), Fla. Stat. (2014). [3]

In order to prevent irreparable harm, the trial court must conduct a thorough, front-end factual analysis to determine standing. Unfortunately no such analysis occurred in this case because in denying the motion to dismiss, the trial court merely opined that the complaint stated a cause of action based on the "unusual facts as set forth in the petition." The facts alleged in the petition, while arguably unusual, irrefutably indicate that it was legally impossible for Pasik to establish standing to petition the trial court for timesharing with the children. And because a cause of action does not exist in the absence of standing, the trial court departed from the essential requirements of the law by not dismissing the petition for timesharing. Thus, we must grant the petition for certiorari.

Petition granted; order quashed.


CASANUEVA and MORRIS, JJ., Concur.

---

[3]Florida's statutory ban on homosexuals adopting children was stricken as unconstitutional in 2010, during the pendency of Russell and Pasik's relationship. See Fla. Dep't of Children & Families v. Adoption of X.X.G., 45 So. 3d 79 (Fla. 3d DCA 2010).