# Third District Court of Appeal

## State of Florida

Opinion filed August 23, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-203
Lower Tribunal No. 21-20966
_____


**Ana Carolina Quiceno,**
Appellant,

vs.

**Omar Bedier,**
Appellee.


An appeal from the Circuit Court for Miami-Dade County, Stacy D. Glick, Judge.

Schantz & Schantz, P.A., and Hale Schantz (Davie), for appellant.

No Appearance, for appellee.


Before FERNANDEZ, SCALES, and MILLER, JJ.

MILLER, J.

Appellant, Ana Carolina Quiceno, the mother, challenges a final judgment of dissolution of marriage granting equal timesharing and shared parental responsibility over her minor child, J.Q., to appellee, Omar Bedier.[1] As Bedier is not the biological or adoptive parent of the child and there has been no finding of "parental unfitness or substantial threat of significant and demonstrable harm to the child," we are constrained to reverse the decision under review. LiFleur v. Webster, 138 So. 3d 570, 574 (Fla. 3d DCA 2014).

**BACKGROUND**

In 2016, Quiceno gave birth to J.Q. She identified her then-partner as the father on the birth certificate. Quiceno subsequently wed Bedier. During the marriage, Quiceno obtained a judgment disestablishing J.Q.'s putative father's paternity. Bedier did not, however, adopt J.Q. or seek to establish paternity.

In late 2021, Bedier filed a petition seeking to dissolve the marriage. In his petition, he alleged there were "three minor children born to the parties," including J.Q., and he sought equal timesharing and shared parental responsibility. In an attached Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") affidavit, he identified himself as the "father" of J.Q. and indicated that the child lived with him since birth. He

---

[1] No answer brief was filed in this appeal.

further noted that "Paternity of [J.Q.] [was] disestablished by Final Judgment" in 2018.

The trial court convened a hearing, at the conclusion of which it rendered the challenged judgment, ordering equal timesharing and shared parental responsibility. In support of the decision, the court cited the best interest of the child standard, along with three specific factors: (1) paternity was disestablished during the marriage; (2) J.Q. identified Bedier as his father; and (3) Bedier provided financial support for J.Q. This appeal followed.

## STANDARD OF REVIEW

We ordinarily review timesharing and parental responsibility decisions for an abuse of discretion. Troike v. Troike, 271 So. 3d 1069, 1072 n.3 (Fla. 3d DCA 2019). But to the extent such a decision implicates an issue of law, we conduct a de novo review. See, e.g., Hull v. Hull, 273 So. 3d 1135, 1137 (Fla. 5th DCA 2019).

## ANALYSIS

Section 61.13, Florida Statutes (2023), sets forth a nonexclusive list of factors the court may consider in rendering decisions concerning timesharing and parental responsibility. Consistent with a trilogy of landmark Florida Supreme Court cases, the courts of this state have uniformly held this

3

statutory provision only authorizes "parents' visitation rights and does not extend to nonparents." Lane-Hepburn v. Hepburn, 290 So. 3d 589, 590 (Fla. 2d DCA 2020) (quoting Russell v. Pasik, 178 So. 3d 55, 59 (Fla. 2d DCA 2015)); see also Wakeman v. Dixon, 921 So. 2d 669, 673 (Fla. 1st DCA 2006) ("[C]hapter 61, Florida Statutes, does not allow non-parents to seek custody or visitation."); Kazmierazak v. Query, 736 So. 2d 106, 109 (Fla. 4th DCA1999) (quoting Taylor v. Kennedy, 649 So. 2d 270, 271 (Fla. 5th DCA 1994)) ("Visitation rights are, with regard to a non-parent, statutory, and the court has no inherent authority to award visitation.").

In the first case, Beagle v. Beagle, 678 So. 2d 1271 (Fla. 1996), the Florida Supreme Court considered the constitutionality of a statute authorizing a judge to impose grandparental visitation on an intact family over the objection of at least one parent. Id. at 1272. The statute allowed such visitation so long as the trial court found it to be in the best interest of the child. Id. The court invalidated the statute, holding, "[b]ased upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." Id. at 1276. Consequently, best interest, standing alone, was insufficient to justify intrusion into the parental relationship. Id. at 1277.

4

Two years later, in <u>Von Eiff v. Azicri</u>, 720 So. 2d 510 (Fla. 1998), the court expanded on these principles. There, the court considered the constitutionality of another aspect of the same grandparental visitation statute examined in <u>Beagle</u>. <u>Id.</u> at 510–11. At issue was a provision allowing the court to impose grandparental visitation if one parent or both parents died. <u>Id.</u> Again, the polestar statutory consideration was the best interest of the child. <u>Id.</u>

The court again struck down the statute, finding that:

> [Appellants] possess a constitutional right of privacy in their decision to limit the grandparents' visitation with their child. . . . [Their] parenting decisions do not constitute a substantial threat of demonstrable harm to the child's health or welfare. Thus, the decision they have made regarding the grandparents' visitation with the child is protected by our State's constitution.

<u>Id.</u> at 516. The court further explained:

> [T]here is an inherent problem with utilizing a best interest analysis as the basis for government interference in the private lives of a family, rather than requiring a showing of demonstrable harm to the child. It permits the State to substitute its own views regarding how a child should be raised for those of the parent. It involves the judiciary in second-guessing parental decisions. It allows a court to impose "its own notion of the children's best interests over the shared opinion of these parents, stripping them of their right to control in parenting decisions."

<u>Id.</u> (quoting <u>Beagle</u>, 678 So. 2d at 1276).

Finally, in the third case, <u>Richardson v. Richardson</u>, 766 So. 2d 1036 (Fla. 2000), the court considered whether a portion of the visitation statute

5

conferring upon grandparents the same standing as parents for purposes of evaluating custody arrangement withstood constitutional muster. The court concluded that nonconsensual grandparental visitation "unconstitutionally violates a natural parent's fundamental right to raise his or her child absent a compelling state justification." Id. at 1038. In doing so, the court determined the statute to be "unconstitutional on its face because it equate[d] grandparents with natural parents and permit[ed] courts to determine custody disputes utilizing solely the 'best interest of the child' standard without first determining detriment to the child." Id. at 1043.

In the aftermath of these decisions, Florida appellate courts have concluded the best interest of the child is insufficient to justify granting timesharing rights to any third party, even a stepparent or psychological parent. See Wakeman, 921 So. 2d at 672; Lamaritata v. Lucas, 823 So. 2d 316, 319 (Fla. 2d DCA 2002) ("Contracts purporting to grant visitation rights to nonparents are unenforceable."); Taylor, 649 So. 2d at 271–72 ("Florida courts do not recognize a claim for specific performance of a contract for visitation in favor of a non-parent."); Lane-Hepburn, 290 So. 3d at 591 (quoting De Los Milagros Castellat v. Pereira, 225 So. 3d 368, 370 (Fla. 3d DCA 2017) (Logue, J., concurring) (alterations in original)) ("The law does not empower the courts 'to award child visitation against the will of the birth,

6

biological, or legal parent' even where the courts find 'that visitation [i]s in the best interest of the child because a non-parent qualifie[s] as a 'psychological parent.'").

Against this landscape, we examine the case at hand. Neither the common law presumption of legitimacy nor the statutory framework governing paternity has any application to the facts adduced below. Hence, the disestablishment of paternity during marriage did not concomitantly establish Bedier's paternity. See Simmonds v. Perkins, 247 So. 3d 397, 400–03 (Fla. 2018); § 382.013(2), Fla. Stat. (2023); Ch. 742, Fla. Stat. (2023). Further, Bedier did not adopt J.Q. or otherwise seek to establish paternity. Thus, he enjoys no legal parental status.

The remaining factors relied upon by the trial court, the provision of support and psychological paternity, naturally are probative of the best interest of the child. As explained previously, however, in the absence of a showing of "demonstrable harm," the trial court lacked the discretion to award shared parental responsibility and equal timesharing to a third party. See Beagle, 678 So. 2d at 1276; Von Eiff, 720 So. 2d at 516. Accordingly, we conclude the factors cited below are insufficient to satisfy the applicable standard, and we reverse and remand for further proceedings.

Reversed and remanded.