532 So.2d 12 (1988)
Fred G. SCHILLING, III, Appellant,
v.
Fred S. WOOD and Bertha G. Wood, Appellees.
No. 87-2350.
District Court of Appeal of Florida, Fourth District.
August 17, 1988.
On Motion for Rehearing October 19, 1988.
H.T. Maloney, and Gary S. Maisel, of Patterson, Maloney & Gardiner, Fort Lauderdale, for appellant.
Mitchell B. Luber, of Mitchell B. Luber, P.A., Fort Lauderdale, for appellees.
GLICKSTEIN, Judge.
Respondent/father in a child custody case initiated by the child's maternal grandparents appeals an award of custody to the petitioners/grandparents. We remand with directions to vacate the final judgment and proceed in accordance herewith.
Octogenarians Fred and Bertha Wood are the maternal great-grandparents and legal grandparents of Heidi Schilling, the child whose custody is at issue here. Heidi's mother, Robin Wright Wood, lived with the Woods as a child and was adopted by them.
Robin married Fred G. Schilling, III, and gave birth to Heidi. Robin died of leukemia on June 29, 1986. Robin's biological parents, the Wrights, also sought custody of Heidi, but were dismissed as without standing because they had given up Robin, Heidi's mother, for adoption.
While her mother was alive Heidi lived in Broward County, as did her parents. Heidi was cared for much of the time by the Woods, because both parents worked, and perhaps for other reasons as well. After Robin died, Fred Schilling left Robin with the Woods until October 16, 1986, when he took Heidi back to his parents in Illinois. He did this without telling the Woods what his intentions were, because, he said, they had indicated they would prevent him for doing anything like that. Mrs. Wood, however, said he could have told them his intentions, for there was no reason why he couldn't have taken Heidi to Illinois.
On January 22, 1987, the Woods (and the Wrights) filed an original petition for permanent custody of Heidi, then 3 1/2 years old, and moved for an ex parte injunction to grant them temporary immediate custody. They recited as reasons that the child is frightened of the father because she had seen him beat her mother and he had also been punitive toward the child; that the father had traumatized the child by removing her to Illinois, without emotional preparation, from her grandparents' home, where she had comfortably spent most of the waking hours and many full days and nights of her young life while her mother was alive, and about five months full time after her mother's death; that the father was only irregularly employed and financially irresponsible, and that his main interest in the child was in her social security *13 checks as the surviving minor child of Robin.
On the day that the grandparents' petition and motion were filed, the court issued an ex parte order holding it had custody pursuant to the Uniform Child Custody Jurisdiction Act, section 61.1308, Florida Statutes, and granting the temporary injunction sought by the grandparents without notice to appellant. This gave the grandparents temporary custody of Heidi. On January 26, 1987, an ex parte petition to register and enforce the ex parte custody order was filed in the circuit court of Cook County, Illinois. That court acceded to the request to incorporate the Broward County order in an order of the Illinois court and to instruct the sheriff of Cook County to remove Heidi from Fred Schilling's Illinois home. That was done, and the child was returned to her grandparents' Florida home.
On February 12, 1987, Fred Schilling moved to dissolve the temporary injunction, and on February 25, 1987, he moved to dismiss the action on the ground the grandparents lacked standing to institute a custody action. The court appointed a former lawyer and judge, Theodore Weinberger, as Heidi's guardian ad litem, on March 4, 1987. The first of Schilling's motions was denied on March 12, 1987, and the second on May 20, 1987. On August 6, 1987, after hearing extensive testimony, the court awarded the grandparents permanent custody, having found appellant unfit to be granted custody.
There was a great deal of evidence, basically undisputed, that Heidi had spent most of her young life under the care of her legal grandparents. There was also much testimony that Fred Schilling on several occasions beat up Robin, Heidi's late mother. He also was said to have had fights with other people. Schilling had other versions of the same events. While he admitted some pushing and shoving he denied ever striking his late wife.
Daphne Facey, whose testimony was only proffered because there was a question as to whether her testimony was inadmissible hearsay evidence, said Robin was afraid of Fred and thought her miscarriage was attributable to Fred's violence against her. She also said Robin told her the baby was with the Woods so much because Fred was too rough with the baby.
Although Fred denied it, there was ample testimony of Schilling's violence with Heidi. Mr. Wood said Schilling shook or spanked Heidi if she wet her pants; both of the Woods and Mr. Wright saw Fred hit Heidi's hands so hard they swelled, when she picked up food with her fingers at age two. Mr. Wood and Mr. and Mrs. Wright all saw Fred pick Heidi up by the arm and hit her with a full force swing such as to take her feet out from under her. They thought it could have broken her back. Both Mrs. Wright and Mr. Wood saw Schilling shake Heidi so hard they thought her head would fall off.
There was conflicting testimony about the state of Heidi's urinary continence when her father took her off to Chicago. Mrs. Wood said Heidi was no longer wetting her bed or her pants, at that time. She did wet her bed after she was in Chicago. Schilling maintained she had not become continent prior to his taking her.
There was testimony both of family members and of a nursery school teacher that Heidi had been spontaneous and vivacious before going to Chicago, but had become subdued and quiet in Chicago, and remained that way when she returned. The teacher said she seemed frightened. She was improving, however. Mrs. Wood testified that when Heidi first came back she kept calling herself a bad girl, and flew into a panic when she spilled something and on another occasion when she was about to be put to bed. Heidi fears separation from her grandmother and also is restless sleeping.
Psychologist Michael Walczak testified Heidi was bonded to Mrs. Wood, who had supplied most of her psychological needs since Heidi was born. He said taking Heidi from the Woods would be detrimental to her present and future development.
There was in evidence a tape that Schilling's mother had sent him, in which she described his immaturity and chronically *14 violent and irresponsible behavior, and admonished him to straighten up.
Theodore Weinberger recommended that the Woods be given custody and that appellant be given visitation rights. He did not believe Fred Schilling could adequately provide the care Heidi needed. Much of what the guardian ad litem said paralleled the psychologist's testimony.
The natural father properly contests the grandparents' standing to bring an action to determine custody of the minor child. Grandparents lack standing to initiate a custody action against a child's parents who legally have not given up custody of the child where such custody is sought in the absence of a Chapter 61 dissolution of marriage proceeding or a Chapter 39 dependency action. Although we find that the grandparents lacked standing to pursue the instant action, we hold that the grandparents herein may amend and transfer this action as a separate Chapter 39 proceeding within thirty days. On the basis of the outcome of such proceeding, it may be determined that physical custody of the child should remain with the grandparents.
Should the grandparents elect not to transfer and initiate such a proceeding, we direct the trial court to appoint a guardian ad litem for the child to pursue before it, as the plaintiff, a proceeding under Chapter 39. Section 415.503(7), Florida Statutes (1987), reads:
"Guardian ad litem" means a responsible adult who is appointed by the court to represent the best interests of a child in a proceeding as provided for by law, including, but not limited to, chapter 39 and this chapter, who shall be a party to any judicial proceeding as a representative of the child, and who shall serve until discharged by the court.
That guardian should be someone trained under the State Court Administrator Guardian Ad Litem Custody/Dissolution Project. See Fuller, Guardians Ad Litem in Custody Dispute Resolutions: Representation of the Child's Best Interests, The Florida Bar Journal, July/August, 1988.
The same trial judge should, if feasible, preside over the entire proceeding because of his knowledge of the case, notwithstanding our additional direction that Chapter 39 be utilized. See Esdale v. Esdale, 487 So.2d 1219 (Fla. 4th DCA 1986), Glickstein J., concurring specially. In reaching the ultimate decision as to the best interests of the child by a determination of the child's custody, the trial court is directed to use the evidence it has already received and to receive such additional pleadings and evidence as it deems necessary.
Although we have directed the vacating of the final judgment, we have done so solely because of the "standing" issue. Based on the findings in that final judgment, the child shall remain with the grandparents until such time as the trial court, on remand, should determine that her best interests require a change.
We urge the trial court to expedite the disposition of this proceeding, given the passage of time since the original petition.
DOWNEY and DELL, JJ., concur.

ON MOTIONS FOR REHEARING
We strike as untimely appellees' motion for rehearing. In clarification of our opinion we delete therefrom the following paragraph:
Daphne Facey, whose testimony was only proffered because there was a question as to whether her testimony was inadmissible hearsay evidence, said Robin was afraid of Fred and thought her miscarriage was attributable to Fred's violence against her. She also said Robin told her the baby was with the Woods so much because Fred was too rough with the baby.
The court was not reweighing the evidence by the paragraph's inclusion but only reciting facts and circumstances for the information of readers of the opinion. We eliminate it to dispel uncertainty.
When we refer in the opinion to the child's best interest, we refer to the standard found in In re: The Guardianship of D.A. McW., 460 So.2d 368 (Fla. 1984) and In *15 re: The Guardianship of D.A. McW., 429 So.2d 699 (Fla. 4th DCA 1983).
Having clarified our opinion, appellant's motion for rehearing is denied.
DOWNEY and DELL, JJ., concur.