766 So.2d 1036 (2000)
Charlene RICHARDSON, Appellant,
v.
Adrienne RICHARDSON, Appellee.
No. SC94810.
Supreme Court of Florida.
August 17, 2000.
*1037 Robert R. Kimmel of the Law Offices of Kimmel & Batson, Chartered, Pensacola, Florida, for Appellant.
Adrienne E. Richardson, Zionville, North Carolina, Appellee, pro se.
PER CURIAM.
We have for review Richardson v. Richardson, 734 So.2d 1063 (Fla. 1st DCA 1999), a decision of the district court declaring invalid a state statute. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Consistent with our recent rulings on similar issues, we affirm the district court decision and hold that section 61.13(7), Florida Statutes (1999), is facially unconstitutional in vesting custody rights in others because it violates a natural parent's fundamental right to rear his or her child.

MATERIAL FACTS
This case involves a dispute between a natural parent and a paternal grandparent over the custody of a minor child. In 1988, appellee Adrienne Richardson married Raymond Richardson. The couple bore a child, Ashleigh Richardson, on December 29, 1989. In 1994, the couple divorced and appellee was awarded custody of Ashleigh. According to the terms of the Marital Settlement Agreement, neither parent was permitted to move the child's residence beyond a one-hundred mile radius of Pensacola, Florida. The father was awarded reasonable visitation rights.
From 1992 until 1996, Ashleigh resided off and on with the appellant, Charlene Richardson, and her husband, Raymond Richardson, the child's paternal grandparents. Ashleigh lived with her grandparents four to five days out of the week and visited her mother on the weekends. Then in December of 1996, the mother took the child to North Carolina for Christmas and refused to return her to Florida. In January, 1997, the father filed a motion to modify custody on the grounds of change in circumstances. He sought custody of Ashleigh alleging the mother removed the child to North Carolina in violation of the Marital Separation Agreement and that the mother's living arrangement had subjected the child to harm.
In February 1997, the grandparents moved to intervene in the modification proceedings and petitioned for custody of the child under the provisions of section 61.13(7) which authorizes custody for grandparents if a child is "actually residing with a grandparent in a stable relationship," and the trial court granted the motion to intervene. The father subsequently withdrew his motion for custody and took the position that the grandparents should be awarded custody.[1] After a two-day trial in September, 1997, the trial court transferred custody of the child to *1038 the grandparents pursuant to the provisions of section 61.13(7).
The mother appealed the trial court's transfer order. The district court held that section 61.13(7) violated article I, section 23, of the Florida Constitution by "permitting evaluation of the grandparents' custody request solely upon a best interest [of the child] standard." Richardson, 734 So.2d at 1064 (relying on Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998), and Beagle v. Beagle, 678 So.2d 1271 (Fla. 1996)). The court reasoned that section 61.13(7) suffered from the same constitutional infirmity as the grandparents' visitation statute in Von Eiff and Beagle because it invoked a best interest standard without requiring proof of a substantial threat of significant and demonstrable harm to the child as required by those decisions. See 734 So.2d at 1064.

LEGAL ARGUMENT
Section 61.13(7) states:
In any case where the child is actually residing with a grandparent in a stable relationship, whether the court has awarded custody to the grandparent or not, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child.
See § 61.13(7), Fla. Stat. (1997). This section clearly gives grandparents the right to intervene in a custody dispute under chapter 61 and be granted the same legal custody rights as the natural parents, if the grandparents establish that (1) the child is actually residing with the grandparents, and (2) in a stable relationship. The mother asserts that the statute is facially unconstitutional because it gives grandparents an elevated status and a fundamental right to raise their grandchild equal to that of a parent. Further, the statute permits courts to determine which party should obtain custody of the child based solely on the "best interest of the child" standard, without first determining whether the parent is unfit or whether detriment would result to the child if custody was awarded to the parent.
The grandmother, appellant, argues that section 61.13(7) is not facially unconstitutional under the reasoning of Von Eiff and Beagle because those decisions dealt with a completely different statutory provision. Alternatively, she argues that section 61.13(7) may be saved by interpreting the statute in a way that passes constitutional muster. While we recognize the obvious good intentions of the Legislature in passing this legislation as well as the grandparent visitation legislation, we disagree with both of the grandmother's contentions.
Under our prior holdings, including Von Eiff and Beagle, it is apparent that section 61.13(7) unconstitutionally violates a natural parent's fundamental right to raise his or her child absent a compelling state justification.[2] In Von Eiff and Beagle the *1039 statute in question was limited to visitation rights to grandparents,[3] while section 61.13(7) grants custody rights. In Von Eiff, we explained that Florida's Constitution guarantees a right to privacy and that such right includes a parent's fundamental right to rear his or her child free from governmental intrusion and control. See 720 So.2d at 513. We further explained that "the state can satisfy the compelling state interest standard [only] when it acts to prevent demonstrable harm to a child." Id. at 515 (quoting Beagle, 678 So.2d at 1276). Accordingly, we held that a trial court may not intrude upon the parent-child relationship by awarding visitation rights to a grandparent without evidence of a demonstrable harm to the child. Id.; see also Beagle, 678 So.2d at 1276.
This conclusion is also, of course, consistent with this Court's long-standing view of custody disputes between natural parents and third parties, including grandparents. As we declared in In re Guardianship of D.A. McW,
When a custody dispute is between two parents, where both are fit and have equal rights to custody, the test involves only the determination of the best interests of the child. When the custody dispute is between a natural parent and a third party, however, the test must include consideration of the right of a natural parent "to enjoy the custody, fellowship and companionship of his off-spring.... This is a rule older than the common law itself." State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957). In Reeves we held that in such a circumstance [sic], custody should be denied to the natural parent only when such an award will, in fact, be detrimental to the welfare of the child. We explained what would constitute detriment to the child and approved a temporary grant of custody to the grandparents because of the father's temporary inability to care for the children after the mother's death. We cautioned, however, that the father would be entitled to custody once his ability to care for the children was established. Id. at 20-21.
460 So.2d 368, 369-70 (Fla.1984). Although D.A. McW was not decided on constitutional principles, we reaffirmed there our longstanding view that the natural parent had a clear preference to custody over all others based upon the status of parenthood. Id. at 370.
The reasoning and logic of D.A. McW, Von Eiff and Beagle applies with equal, if not more compelling, force here. In effect, section 61.13(7) treats grandparents and natural parents alike by giving grandparents custody rights equal to those of a parent, and allows courts to make its custody determination between parents and grandparents based solely on the best interest of the child standard. The grant of such rights to grandparents is unconstitutional *1040 under our reasoning in Von Eiff because it also interferes with the natural parent's fundamental right to privacy in rearing one's own child, a right this Court found to exist under article I, section 23 of the Florida Constitution. See Von Eiff. Hence, we find no valid basis to distinguish the custody statute we consider here from the visitation statute we considered in Von Eiff and Beagle, except for the fact the custody statute is even more intrusive upon a parent's rights.

SAVING CONSTRUCTION
The grandmother also contends that section 61.13(7) may be saved by interpreting the provision in light of well-established case law on grandparents' rights to custody, or by adding conditional language to the statute.[4] She relies on the First District's holding in S.G. v. C.S.G., 726 So.2d 806 (Fla. 1st DCA 1999), which rejected the argument that section 61.13(7) requires courts to place grandparents on equal footing with natural parents. Rather, the First District held there that the statute merely gives grandparents standing to seek custody of a minor child. See id. at 808; see also In re J.M.Z., 635 So.2d 134, 135 (Fla. 1st DCA 1994).[5] Under this construction of the statute, even though a court determines that the grandparent has standing under section 61.13(7) to seek custody, the court may still not intervene in a parent-child relationship or determine whether custody with a grandparent is in the best interest of the child, unless it has been established that the parent abandoned the child, that the parent is unfit or that harm would result to the child if the parent were to be awarded custody. See S.G., 726 So.2d at 811 (relying on In re Guardianship of D.A. McW, 460 So.2d at 369-70); see also Murphy v. Markham-Crawford, 665 So.2d 1093, 1094 (Fla. 1st DCA 1995).[6] While the outcome in S.G. v. C.S.G. may be consistent with the legal requirements of our prior decisions, we believe its analysis is incorrect. We do not believe the unambiguous provisions of the statute may be saved either by severing *1041 portions thereof or applying a narrowing construction.
The first option, severability, depends on the following test:
When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provision, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.
Waldrup v. Dugger, 562 So.2d 687, 693 (Fla.1990) (quoting Cramp v. Board of Public Instruction, 137 So.2d 828, 830 (Fla.1962)). In Waldrup, an inmate challenged the 1983 amendments to the gain time statutes as a violation of the Ex Post Facto clause of the U.S. Constitution. We held that the incentive gain time portion of the legislative scheme violated the prohibition against ex post facto laws. See 562 So.2d at 692. To save the constitutionality of the entire statute, we then severed the unconstitutional portion of the act. Severing the unconstitutional portion was permissible in that case because the severed portion could be replaced with the pre-1983 law, the legislative purpose (regarding gain time) could still be accomplished, the "good" and "bad" portions of the act were not so inseparable that it could be said the Legislature intended to pass one but not the other, and the act remained complete in itself after the invalid provisions were stricken. Id. at 693-94.
Here, however, it would be virtually impossible to sever the unconstitutional language from section 61.13(7) and yet maintain the Legislature's clear purpose in enacting the statute. It is apparent that the purpose of the statute is to give grandparents the same standing as parents based upon the fact the child may be residing with them in a stable relationship. Under our prior holdings, these factors are not sufficient by themselves to justify interference with a parent's constitutional custody rights. Moreover, it is this elevation of the status of the grandparents to the "same" status as parents and allowing a custody decision to be solely based upon the "best interest of the child" that violates the constitutional imperatives we have recognized. If we follow appellant's suggestion and strike the words "actually residing," "stable relationship," "same" and "best interest of the child" we would be defeating the obvious purpose of the statute.
The legislative history to section 61.13(7) also confirms this conclusion. The final analysis for the bill states:
This bill creates a third option the court is permitted to consider when ordering custody which is in the best interests of the minor child following a dissolution proceeding. In cases where the minor child actually resides with the grandparent in a stable relationship, the court may give the grandparents the same standing as parents for purpose of ordering custody of the child.
Fla. H.R. Comm. on Judiciary, HB 699 (1993) Staff Analysis 3 (final Apr. 19, 1993) (on file with comm.). The final analysis further notes that the "bill proposes a significant change in the expressed policy of the state regarding the relationship of the children to their parents following a dissolution proceeding." Id. at 5. Thus, under the constitutional test set forth above, severance is not an option in this case.
We also recognize that courts sometimes apply a narrowing construction to a statute to salvage its validity. In State v. Stalder, 630 So.2d 1072 (Fla.1994), for example, we stated:
We note that in assessing a statute's constitutionality, this Court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given *1042 a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Elder, 382 So.2d 687, 690 (Fla. 1980). Further, "[w]henever possible, a statute should be construed so as not to conflict with the constitution. Just as federal courts are authorized to place narrowing constructions on acts of Congress, this Court may, under the proper circumstances, do the same with a state statute when to do so does not effectively rewrite the enactment." Firestone v. News-Press Publishing Co., 538 So.2d 457, 459-60 (Fla.1989) (citations omitted).
Id. at 1076 (emphasis added). However, the cases cited by the grandmother in support of application of this option typically involve challenges to a statute based on overbreadth, see Doe v. Mortham, 708 So.2d 929, 934 (Fla.1998) ("[I]t is [the Supreme Court's] duty to save Florida statutes from the constitutional dustbin whenever possible."); Stalder, 630 So.2d at 1073; Schmitt v. State, 590 So.2d 404 (Fla. 1991), or vagueness, L.B. v. State, 681 So.2d 1179 (Fla. 2d DCA 1996) (same), reversed, 700 So.2d 370 (Fla.1997); State v. Mitchell, 652 So.2d 473 (Fla. 2d DCA 1995).[7] We have found no cases in which this Court applied such a narrowing construction to a statute challenged solely on the basis that its clear provisions violate a substantive constitutional right. The likely reason for this result is that the constitutionality of the statute, depending on the substantive right involved, depends solely on whether the statute passes the rational basis, intermediate, or strict scrutiny tests. Unlike statutes challenged on grounds of overbreadth, there is no need (nor is it permissible) to consider hypothetical consequences of a statute that allegedly violates a substantive, fundamental right.[8] Such a statute is unconstitutional under any circumstance unless the State satisfies its burden of establishing a compelling state interest.
We are also wary of actually judicially amending the statute by adding language that the Legislature so clearly did not intend to use. If this Court were to construe the statute narrowly by inserting a harm to the child element, we would in effect be rewriting the statute and changing it in a manner not intended by the Legislature. As we have previously explained, courts should refrain from reading elements into a statute that plainly lacks such additional elements. See Schmitt, 590 So.2d at 414. The statute here expressly intends to give grandparents the same standing as parents for purposes of determining who should have custody of the child. To construe the statute in the way urged here (i.e., insert a harm to the child element or strike the objectionable language) would clearly contravene the Legislature's stated purpose. As noted above, we recognize the Legislature's obvious good intentions in enacting the statute and the Legislature's continuing authority to enact a statute in accord with our decisions on this issue. However, under fundamental principles of separation of powers, this Court is without authority to *1043 change the wording of section 61.13(7) by judicially inserting a harm to the child element where the Legislature clearly has not done so.
Finally, we reject appellant's argument that the mother waived or abandoned her fundamental interest in the child by allowing the child to reside with the grandparents. The record does not indicate any evidence of abandonment. Rather, the facts in this case reveal that the mother agreed to let Ashleigh reside with her grandparents on a temporary basis while the mother worked and obtained a college degree. This arrangement demonstrates the mother's concern for the child's well-being and not, as appellant contends, an indication that the mother waived her interest in the child.
In closing we note that in all custody cases, trial courts have broad continuing jurisdiction to ensure the protection of children within the court's jurisdiction and over matters related to the well-being of a child. Cf. Cone v. Cone, 62 So.2d 907 (Fla.1953).[9] Further, if circumstances present themselves that question the safety of the minor child, any concerned party may seek the initiation of proceedings to protect the well-being of the child. See Schilling v. Wood, 532 So.2d 12 (Fla. 4th DCA 1988) (recognizing third party's right to initiate dependency proceedings under chapter 39). In addition, and, most importantly, trial courts should not hesitate to invoke the protective provisions of chapter 39 or otherwise act where a need for the immediate protection of a child becomes apparent. The record here reflects that all parties and the trial court were aware of these protections and were sensitive to them.[10] The record further reflects that the mother had an amicable relationship with the grandparents and confidence in their assistance in raising the child. Indeed, the trial court found that the mother facilitated frequent contact between the child and her grandparents and father. We can only hope that such a healthy relationship will continue despite this litigation. It is clearly in the best interest of all and consistent with the public policy of Florida that there be a cooperative and healthy relationship among family members, grandparents, parents, and children alike.
Accordingly, we hold that section 61.13(7) is unconstitutional on its face because it equates grandparents with natural parents and permits courts to determine custody disputes utilizing solely the "best interest of the child" standard without first determining detriment to the child. Such provision as presently constituted permits unwarranted governmental interference with a natural parent's right to rear his or her own child, a right we have found to be protected under article I, section 23 of Florida's Constitution. We hereby affirm the decision below.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] The record does not disclose a formal motion to withdraw the father's motion to modify custody. However, in a memorandum of law dated September 12, 1997, the father requested that the court award custody to his parents.
[2] Idaho and Kentucky have similarly worded statutes. The Idaho statute states that "[i]n any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interests of the child." See Idaho Code § 32-717 (1996); see also Ky.Rev.Stat. Ann. § 620.027 (Michie 1999) (same). Neither Idaho nor Kentucky courts have addressed, the constitutionality of the statutory provisions. Statutes in several other states, however, require findings of parental unfitness or harm to the child before permitting custody to third persons. See Cal. Fam.Code § 3041 (West 1994) ("Before making an order granting custody to a person or persons other than a parent, without the consent of the parents, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to a nonparent is required to serve the best interest of the child."); La. Civ.Code Ann. art. 133 (West 1999) ("If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any person able to provide an adequate and stable environment."); Mo. Ann. Stat. § 452.375(5)(a) (West Supp.2000) ("When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody, or visitation may be awarded to any other person or persons deemed by the court to be suitable to provide an adequate and stable environment for the child.").
[3] The statute at issue in Von Eiff and Beagle provides in pertinent part:

(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
§ 752.01(1), Fla. Stat. (1997). Von Eiff involved a challenge to section 752.01(1)(a) and Beagle involved a challenge to section 752.01(1)(e), Florida Statutes (1995).
[4] Appellant urges this Court to either strike the unconstitutional portions of the statute or apply a narrowing construction the same way the First District did in S.G. v. C.S.G., 726 So.2d 806 (Fla. 1st DCA 1999). However, it should be noted that appellant raises this argument for the first time in this Court. Appellant did not argue this point to the district court below and, therefore, has not properly preserved the issue for appeal. Nevertheless, we disagree with appellant's contention that this Court may apply such tools of statutory construction to save section 61.13(7). Neither option applies in this case.
[5] Cf. Russo v. Burgos, 675 So.2d 216 (Fla. 4th DCA 1996).
[6] In interpreting section 61.13(7) the Second District, however, has reached the opposite conclusion. The court in S.G. v. G.G., 666 So.2d 203, 205 (Fla. 2d DCA 1995), holds that section 61.13(7) permits courts to apply the "best interest of the child" standard in a custody dispute between a parent and a grandparent without first determining parental unfitness or harm to the child. That court stated:

The second issue raised by appellant is linked to the previously-discussed issue and also involves an interpretation of section 61.13(7). Appellant argues that the trial court erred in awarding custody of Michael to appellee [grandmother] on a "best interest of the child" standard. Appellant relies on In re Guardianship of D.A.McW., 460 So.2d 368 (Fla.1984), Paul v. Lusco, 530 So.2d 362 (Fla. 2d DCA 1988), rev. denied, 539 So.2d 475 (Fla.1989) and In re Guardianship of Wilkes, 501 So.2d 704 (Fla. 2d DCA 1987), for the principle that the best interest of the child standard is not applicable to a custody dispute between a parent and a non-parent because a parent may not be deprived of custody absent a finding of unfitness or long-term detriment to the child. While the principle relied upon by appellant is correct for the cases cited, appellant's argument overlooks the clear provisions of section 61.13(7) that are applicable to the circumstances of this case. That section provides that appellee, with whom Michael has resided in a stable relationship for the better part of his life, may be recognized as having the same standing as appellant "for evaluating what custody arrangements are in the best interest of the child."
Id. at 205; see also Carpenter v. Berge, 686 So.2d 759 (Fla. 5th DCA 1997). S.G. v. G.G., however, did not depend on constitutional principles and was decided before this Court's decisions in Beagle and Von Eiff.
[7] Appellant's reliance on Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565 (Fla.1991), is misplaced. At issue there was whether courts may consider a parent's prior termination of rights in other children as grounds for permanently severing the parental rights with respect to a different child. In resolving this issue, the Court did not have to insert additional elements into the parental termination statute. Nor did the case turn on whether the statute was constitutional.
[8] See generally Erwin Chemerinsky, Constitutional Law: Principles and Policies 79 (1997) (noting that overbreadth doctrine is an exception to the prohibition against third party standing: "It permits a person to challenge a statute on the ground that it violates the First Amendment rights of third parties not before the Court, even though the law is constitutional as applied to that defendant."). Chemerinsky also notes that "when confronted with an overbreadth challenge courts should attempt to construe the statute so as to avoid constitutional problems, and failing that, should, if possible, attempt to sever the unconstitutional part of the law from the remainder of the statute." Id. at 80.
[9] While we adhere to Cone's conclusion concerning the court's continuing jurisdiction over the welfare of children, we note that its holding as to the merits of the custody dispute, to the extent it granted custody of the minor children to the grandmother absent a showing of detrimental harm to the children if custody were to be awarded to the children's natural father, has been impliedly overruled by this Court's decisions in In re D.A. McW, Beagle, and Von Eiff.
[10] While there is some evidence of emotional instability, there is no evidence in the record that the mother has ever physically abused the child, although there is evidence of abuse by the father, whose parents are the grandparents involved herein. Further, while there is an indication that the State of Florida has investigated the home circumstances of all of the parties there is no claim that the State has sought to remove the child from the mother.