804 So.2d 589 (2002)
Tina SINCLAIR, Appellant,
v.
Dale SINCLAIR and Anita Mallette, Appellees.
No. 2D00-1307.
District Court of Appeal of Florida, Second District.
January 18, 2002.
*591 Thomas S. Hudson, Sarasota, and Gerald F. O'Brien, Sarasota, for Appellant.
Peter S. Baranowicz of Deciantis, Baranowicz & Calderon, P.A., Venice, for Appellees.
Stephen R. Scarborough, Atlanta, Georgia, for Amicus Curiae Lambda Legal Defense and Ed. Fund, Inc.
SILBERMAN, Judge.
Tina Sinclair appeals from a final judgment denying her supplemental petition for primary residential custody of her three children. Because the existing custody arrangement is in the best interests of the children and a change in residential custody would be detrimental to them, we affirm.
Tina Sinclair (the Mother) and Dale Sinclair (the Father) were married in 1986. They had three sons, born in 1986, 1989, and 1990. The Mother relocated to West Palm Beach in 1991, and she has continued to live there with her same-sex partner. Since 1991, the children have resided with the Father and Anita Mallette (the paternal Grandmother) in Sarasota County, Florida.
In 1997, the Sinclairs were divorced. The final judgment of dissolution provided that they would have shared parental responsibility of their three children with the Father serving as the primary residential parent.
In September 1998, the Mother sought, on an emergency basis, full custody of the children. She alleged that the Father had been arrested for criminal charges and was being held in jail. She also filed a supplemental petition for modification of parental responsibility and requested sole parental responsibility for the children.
The Grandmother moved to intervene pursuant to section 61.13(7), Florida Statutes (Supp.1998). She alleged that the best interests of the children would be fulfilled by maintaining the status quo, that is, leaving the children in her custody. The trial court allowed the Grandmother to intervene and denied emergency relief to the Mother. In its order, the trial court determined that no emergency existed and that it would not be in the best interests of the children to change their environment on an emergency basis.
The Father and the Grandmother responded to the Mother's supplemental petition and denied the pertinent allegations as to the Mother's obtaining sole parental responsibility. The Grandmother filed a counter-petition for custody of the children. She alleged that the Mother and Father separated in 1991 and that the children had resided with her since that time. She asserted that the children had thrived in her care; that she was the psychological parent of the children; that the children were approximately five years old, two years old, and nine months old when they moved in with her; and that the children had little contact with the Mother due to the Mother's lack of interest.
The evidence at trial addressed the best interests of the children and the impact a change in residential custody would have on them. Evidence was also presented regarding the Mother and her relationship with her significant other, as well as their interactions with the children. Additionally, *592 the trial court heard expert testimony and had before it the report of the guardian ad litem.
The Mother had very limited contact with the children since 1991. After the current proceedings were commenced, her telephone contact was once or twice per month and her visitation consisted of Thanksgiving, Christmas, and a summer visit. The Mother failed to pay her child support obligations and had been in arrears for years.
The trial court concluded that there was very little bond between the Mother and the children and little evidence as to the Mother's providing care for the children. The trial court found that the children had a close and strong bond with the Grandmother and that they considered her to be their psychological parent. The Grandmother provided the children with food, clothing, medical care, and otherwise met their physical, mental, and emotional needs. The children had lived in the same home, had attended local schools, and had the same care providers for over eight years. The children were well-adjusted and happy in their community and environment.
The trial court considered problems and concerns relating to the possible change of residential custody. These included the childrens' anger, confusion, and fear about changing schools and homes, the living arrangements of the Mother, and the problems that the children encountered when staying with the Mother. The trial court also weighed the evidence as to the childrens' preferences and concluded that the two younger children strongly preferred to remain with the Grandmother while the older child had not expressed a preference.
The record reflects that while the Father generally resided with the children in the Grandmother's home, during certain periods the Father lived elsewhere while the children remained with the Grandmother. The trial court determined that from 1991, when the parents separated, until the time of trial, the children had a stable environment in the Grandmother's home.
In entering judgment, the trial court concluded that it would be in the best interests of the children for them to remain in the custodial care of the Grandmother and that a change in custodial care would be detrimental to the children. Although the trial court agreed that the Mother would continue to have visitation rights, it denied the Mother's petition for a change in residential custody.
In this appeal, the Mother asserts several issues: (1) she should have obtained residential custody of her children because she is their natural mother, and the Father, who had residential custody, had been incarcerated; (2) the Grandmother did not have standing in these proceedings; (3) an expert witness should not have been permitted to testify regarding statements made by the children; (4) the trial court applied the wrong legal standards; and (5) the trial court improperly took judicial notice as to certain matters. We affirm on all points but write to address the applicable legal standards and the issue of standing.
In her brief, the Mother disputes several of the trial court's factual findings. Our review reveals that there is competent, substantial evidence supporting the findings made by the trial court. The trial court is in the best position to weigh the evidence and to determine the credibility of the witnesses, and it is not for this court to re-weigh the evidence or to substitute its judgment for that of the trial court. In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995).
*593 The Mother next argues that the Florida Supreme Court decision in Richardson v. Richardson, 766 So.2d 1036 (Fla. 2000), mandates reversal. At the time of trial, Richardson had not yet been decided. The supreme court held "that section 61.13(7), Florida Statutes (1999), is facially unconstitutional in vesting custody rights in others because it violates a natural parent's fundamental right to rear his or her child." Richardson, 766 So.2d at 1037. The Mother suggests that in light of Richardson, she had the absolute right to immediate custody of the children and that the Grandmother had no standing to contest the Mother's right to custody.
The Mother's argument ignores several facts. She had little contact with the children since 1991 when the youngest child was nine months old, the middle child was two years old, and the oldest child was five years old. When she and the Father separated, she moved to West Palm Beach. While the Father had residential custody pursuant to the final judgment of dissolution of marriage, the children actually resided in the Grandmother's home since 1991. The children remained in the Grandmother's home even when the Father lived elsewhere.
Moreover, Richardson does not state or suggest that a third party such as the Grandmotherwho, at the time that the proceedings were commenced, had actual physical custody of the children and had custody for a lengthy period of timeis excluded from participating or lacks standing in a custody proceeding with a parent. Instead, the supreme court determined that section 61.13(7), Florida Statutes (1999), was unconstitutional because it gave grandparents custody rights equal to those of a parent, and it allowed courts to make custody decisions between parents and grandparents using solely the best interest of the child standard. Richardson, 766 So.2d at 1039. The supreme court also stated that the statute improperly interfered with the natural parent's right to privacy in raising the child. Id. at 1039-40.
In Richardson, the supreme court adhered to its conclusion in an earlier decision, Cone v. Cone, 62 So.2d 907 (Fla.1953), that a trial court has continuing jurisdiction over the welfare of children. Richardson, 766 So.2d at 1043 n. 9. The supreme court recognized that Cone had been overruled "to the extent it granted custody of the minor children to the grandmother absent a showing of detrimental harm to the children if custody were to be awarded to the children's natural father." Id.
Under the circumstances present here, the trial court properly allowed the Grandmother to intervene. The Grandmother had actual physical custody of the children for many years, with the Mother's knowledge, and was a natural grandparent of the children. She had an interest in the proceeding and was properly allowed to participate. See Stefanos v. Rivera-Berrios, 673 So.2d 12, 13 (Fla.1996); Fla. R. Civ. P. 1.230.
It was also appropriate for the trial court to maintain the status quo pending trial in order that it could receive evidence and exercise its continuing jurisdiction over the welfare of the children. As noted in Buckhalt v. McGhee, 632 So.2d 120, 121 (Fla. 1st DCA 1994), a trial court may make a temporary arrangement for the safety and best interests of a child until a permanent custody hearing can be held, at which all parties may be heard and the proper test applied. In Richardson, the supreme court reiterated the principal "that in all custody cases, trial courts have broad continuing jurisdiction to ensure the protection of children." Richardson, 766 So.2d at 1043.
*594 Ultimately, the trial court had the responsibility to determine whether a change in custody was in the best interests of the children and whether a change in custody would be detrimental to the children. See Richardson, 766 So.2d at 1043 n. 9. Here, the trial court concluded that the best interests of the children would be met if a change in residential custody was not ordered and that a change in custody to the Mother would, in fact, be detrimental to the children. The conclusions of the trial court are supported by the evidence, and the proper legal standards were applied.
The trial court's decision regarding custody is presumed to be correct, and it is the burden of the Mother to demonstrate that the custody decision is clearly erroneous. Wilson v. Wilson, 504 So.2d 1278, 1279 (Fla. 1st DCA 1986). This court cannot disturb the decision of the trial court absent a showing of abuse of discretion. In re Gregory, 313 So.2d 735, 738 (Fla.1975). An abuse of discretion exists only where, based on the evidence that was presented to the trial court, no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there is no abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980); Ward v. Ward, 742 So.2d 250, 253 (Fla. 1st DCA 1996). When there is a conflict in the evidence, the prevailing party in the trial court is entitled to have the evidence viewed in the light most favorable to it. Mirras v. Mirras, 202 So.2d 887, 893 (Fla. 2d DCA 1967); Ward, 742 So.2d at 253.
Although the Mother argues that the trial court improperly considered only the best interests of the children, it is apparent from the record and the final judgment that the trial court considered both the best interests of the children and whether a change in residential custody would be detrimental to them. The trial court properly performed the required legal analysis. See Richardson, 766 So.2d at 1043; Filter v. Bennett, 554 So.2d 1184, 1185 (Fla. 2d DCA 1989) (noting that "a natural parent will be denied custody only where such custody will be detrimental to the welfare of the child or where the natural parent is unfit or otherwise disabled from exercising custody").
Because the trial court applied the correct legal standards, and the record supports the findings made by the trial court, we affirm. We have considered the other points raised by the Mother and conclude that reversible error has not been shown.
Affirmed.
WHATLEY, J., Concurs.
NORTHCUTT, J., Concurs specially.
NORTHCUTT, Judge, Specially concurring.
In their briefs Ms. Sinclair and amicus curiae expressed concern that the circuit court's decision reflected disapproval of her same sex relationship. We carefully explored this possibility, and our review of the record satisfied us that such was not the case.
Their sensitivity to this issue was understandable, given their belief that Ms. Sinclair's right to custody of the children was paramount as against the claim of the children's grandmother, Ms. Mallette. For this reason it must be emphasized that the circuit court did not grant Ms. Mallette's petition for custody. Rather, it denied Ms. Sinclair's petition to modify the final judgment by reassigning primary residential responsibility for the children from their father to herself. As such, I believe the *595 circuit court's decision was within its discretion under traditional principles governing custody modifications in this district.
Beginning with the Sinclairs' separation in the spring of 1991, Mr. Sinclair undertook de facto primary residential responsibility for the children, and that assignment was formalized in the December 1997 judgment dissolving the Sinclairs' marriage. It was undisputed that, throughout, Ms. Mallette had served as the children's primary caretaker. As a legal matter, her role as such was fully consistent with the Sinclairs' shared parental responsibility for the children and with Mr. Sinclair's primary residential responsibility for them; in the absence of circumstances involving abuse or neglect, parents are free to entrust the care of their children to others without interference from the state. See Z.J.S. v. Dep't of Children & Family Servs., 787 So.2d 875, 879 (Fla. 2nd DCA 2001) (Northcutt, J., concurring). It should also be noted that Mr. Sinclair's incarceration did not automatically terminate his parental rights and responsibilities, or even alter the parties' legal relationships. As accurately contemplated by Ms. Sinclair's petition for modification, she and Mr. Sinclair continued to have shared parental responsibility, and Mr. Sinclair continued to be assigned primary residential responsibility for the children.
The question presented by Ms. Sinclair's modification petition was whether (1) there had been a substantial change of circumstances since the final judgment that (2) warranted a modification of the custody arrangement set forth in that judgment. Certainly, a primary residential parent's incarceration is a substantial change of circumstance, but it does not automatically follow that the children's living arrangement must be modified. It is possible to imagine some situations, albeit uncommon ones, in which the children's well being would be largely unaffected by that occurrence where the children attend boarding school, for example.
To be sure, if Mr. Sinclair's incarceration had necessitated a change in caretakers, Ms. Sinclair would have been entitled to assume primary residential responsibility for them. See, e.g., Calle v. Calle, 625 So.2d 988 (Fla. 3d DCA 1993). But the children's care had been entrusted to Ms. Mallette since 1991 and, although not ideal, Mr. Sinclair's absence would not affect the continuity of that care. In other words, as a practical matter Mr. Sinclair's departure did not require a change in the parenting arrangement that had been devised by the parties many years before. For this reason, the circuit court acted within both the law and its discretion when denying Ms. Sinclair's modification petition.