# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-0039
_____

JENNIFER M. MATTINGLY and
CHARLES T. MATTINGLY,

     Appellants,

     v.

LISA HATFIELD,

     Appellee.

_____


On appeal from the Circuit Court for Leon County.
Barbara K. Hobbs, Judge.


February 28, 2024


WINOKUR, J.

This appeal arises out of the parents' attempt to block a grandparent's visitation with their minor child. The parents challenge several trial court rulings in five issues raised on appeal. We reject each of these challenges, but write to explain why we are affirming the judgment dismissing the petition to modify grandparent visitation.

I

Appellants Jennifer M. Mattingly ("Mother") and Charles T. Mattingly ("Father") are the biological parents of E.M.M, born in

Kentucky, where all parties lived in February 2009. Appellee Lisa Hatfield ("Grandmother") is the maternal grandmother of E.M.M. The litigation began in Kentucky.

The relationship between the Mother and Grandmother was deteriorating by 2013. At that time, the family still lived in Kentucky and recognized a "tradition" of Wednesday evening visitations between the Grandmother and E.M.M. When the Mother stopped allowing these visits, the Grandmother petitioned for grandparent visitation in Kentucky.

In 2014, the Kentucky trial court granted the Grandmother's petition and ordered visitation for several specific time periods. To support its order, the Kentucky court found by clear and convincing evidence that grandparent visitation was in E.M.M.'s best interests because the Grandmother was E.M.M.'s primary babysitter and they spent a substantial amount of time together. However, the court noted that the case was filled with manipulation on both sides and expressed concerns for the mental health of both the Mother and Grandmother. The Kentucky appellate court held that the trial court acted within its discretion and affirmed the order.

In 2016, the Mother and Father moved to Florida with E.M.M. In response to the relocation, the parties entered into an "Agreed Supplemental Judgment" ("2016 Kentucky visitation order") that amended grandparent visitation to the Grandmother to reflect the changed circumstances.

The Grandmother continued litigating the visitation order in Kentucky after the parents moved to Florida with the child. Eventually, the Kentucky court held the parents in contempt for failing to comply with certain terms of the modified visitation order, culminating in the parents' incarceration.

While the allegations that led to multiple contempt orders were being litigated in Kentucky, the parents attempted to register the 2016 Kentucky visitation order; however, the Second Judicial Circuit Court in Leon County, Florida, refused to register the foreign judgment because the Kentucky court was continuing to

exercise its exclusive jurisdiction over E.M.M.[1] The Florida court found that the Kentucky court had rejected the parents' claim that Kentucky was an inconvenient forum. Though the Grandmother initially opposed the parents' petition to register the 2016 Kentucky visitation order, she eventually filed her own request for registration. Shortly thereafter, the Grandmother filed another petition to enforce the 2016 Kentucky visitation order in Florida court, which included a request that the trial court direct the Leon County Jail to relinquish jurisdiction of the Mother to the Nelson County Sheriff's Office in Kentucky.

In 2018, the Kentucky court entered an "Agreed Order" ("2018 Kentucky visitation order"). This order did not substantially change the Grandmother's visitation schedule. Instead, the 2018 Kentucky visitation order incorporated the grandparent visitation schedule set out in the 2016 Kentucky visitation order and awarded make-up time-sharing to the Grandmother. The order further stated the parties' agreement that any party could domesticate the 2018 Kentucky visitation order in Florida. On that same day, the Grandmother filed a request to register the 2018 Kentucky visitation order in Florida.

Approximately one year later, the parents filed a petition for dissolution of marriage. When the parents entered into a marital settlement agreement that divested the Grandmother of visitation, The Grandmother moved to intervene. She claimed a direct interest in the proceeding because she had been actively involved in E.M.M.'s life and exercised time-sharing pursuant to the Kentucky visitation orders. She further argued that the petition for dissolution of marriage was a "sham" action.

Around this time, the parents moved to establish exclusive jurisdiction in Florida. The court ruled that "[a]ny visitation rights that the grandparent had in the Kentucky order can be enforced in Florida. . . ." The court also granted the Grandmother's motion to intervene.

---

[1] The parties often use the term "domesticate" to describe the efforts to file the Kentucky order in a Florida court, but "register" is a more appropriate term. *See* § 61.528, Fla. Stat.

3

A final judgment of dissolution was entered in October 2020, and a parenting plan between the Mother and Father was established. By amended judgment, the trial court further ordered that the Grandmother's visitation rights would continue to be enforced until modified by the court.

The parents immediately sought complete elimination of the Grandmother's court-ordered visitation, by filing a petition to "modify" the visitation, alleging multiple substantial, material, and unanticipated changes in circumstances in support of modification. The Grandmother filed a motion to dismiss the petition, in which she argued that the parents failed to demonstrate such a change.

In June 2021, the 2018 Kentucky visitation order was registered, and the parents filed an "Amended Supplemental Petition for Modification of Grandparent Visitation." The parents alleged ten substantial, material, and unanticipated changes in circumstances.

A final hearing was held in December 2021. In their case-in-chief, the parents testified to their divorce and resulting time-sharing arrangement. The Mother submitted that the divorce was substantial and material because the parents now live in separate households. While the Mother was a stay-at-home parent prior to the divorce, by the time of the hearing, she maintained a full-time job outside of the home.

The Mother further stated that she did not anticipate the parents' divorce "until right around the time [she] filed for it." She explained that her earlier comments, which may have implied that the parents were going to get divorced, were made out of anger. When asked if she "repeatedly told the Kentucky court that [the parents] were getting divorced," the Mother answered: "No." She stated that she felt that her marriage "was going well" when the 2018 Kentucky visitation order was entered. The Father, on the other hand, never mentioned a divorce. He stated that he was not even aware that the Mother made such comments. However, the parents admitted to fighting over the financial burden and the stress caused by the overall litigation.

4

As for the parents' post-divorce time-sharing arrangement, the parents testified to their separate households and the diminished time that each parent gets to spend with E.M.M. as a result. The Mother has custody of E.M.M. during the week and the Father has custody during the weekends. The Father attempted to rectify the visitation issues between the Mother and the Grandmother by allowing the Grandmother to visit with E.M.M. during his parenting time. However, the Grandmother was not satisfied because the Father's parenting time alone did not allow for the total amount of visitation to which the Grandmother was entitled.

After the parents rested, the Grandmother moved for involuntary dismissal. She argued that the parents had not met their burden of showing a substantial, material, and unanticipated change in circumstances. The parents countered that, while the Grandmother's interference in their parenting has been ongoing for years, their parenting decisions have evolved as E.M.M. grew older. They also submitted that a divorce and resulting time-sharing arrangement was "as good [of a substantial change] as it gets."

The trial court dismissed the parents' petition for modification of grandparent visitation. In the final judgment, the trial court explained its reasoning as follows:

> Although the parents now live separate lives and the minor child rotates between their two houses pursuant to a parenting plan, the mother has previously advised the Court in Kentucky, prior to 2018, that the stress of grandparent visitation would likely lead to the parents' divorce. The divorce of the parents was not unanticipated and is not material in nature. The court finds that there is no reason why the parents' divorce should impact the grandmother's court-ordered visitation.

This appeal follows.

II

A

The right to grandparent visitation is far broader in Kentucky than it is in Florida. *Compare* Ky. Rev. Stat. § 405.021, *with* § 752.011, Fla. Stat. In Kentucky a grandparent may be granted visitation rights as long as a court "determines that it is in the best interest of the child to do so." Ky. Rev. Stat. § 405.021(1)(a). This statute apparently permits a grandparent to obtain an order forcing even married parents who both live with their child to surrender the child to the grandparent against their wishes, as happened here. This procedure appears to have made a strained relationship worse, resulting in court orders defied by the parents, which in turn resulted in the Grandmother having her own daughter and son-in-law thrown in jail.

The Kentucky policy regarding grandparent visitation rights plainly conflicts with Florida's.[2] Florida's supreme court has interpreted our state constitution to include "a natural parent's right to rear his or her own child" without "unwarranted governmental interference." *Richardson v. Richardson*, 766 So. 2d 1036, 1043 (Fla. 2000). Applying this principle, the supreme court repeatedly has invalidated statutory provisions that give some preference to grandparent visitation rights that interfere with a parent's "longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism." *Beagle v. Beagle*, 678 So. 2d 1271, 1275 (Fla. 1996) (citing *Padgett v. Dep't of Health & Rehab. Serv.*, 577 So. 2d 565, 570 (Fla. 1991)). The supreme court

---

[2] There was a time when Florida's law was similar to Kentucky's, allowing a court to "award the grandparents visitation rights of a minor child if it is deemed to be in the child's best interest." § 61.13(2)(b)2.c., Fla. Stat. (2004). But over time, as noted herein, grandparent visitation laws have been curtailed. Like the other statutory provisions regarding grandparent visitation noted herein, this specific statutory provision was declared unconstitutional. *Sullivan v. Sapp*, 866 So. 2d 28 (Fla. 2004).

has enforced this interest through the Florida Constitution's privacy guarantee.

Accordingly, a statute permitting a court to award visitation rights to a grandparent, even when the minor is living with both natural parents who are still married, and based only on the best interest of the minor child, has been held unconstitutional. *Beagle*, 678 So. 2d at 1276*; see also Von Eiff v. Azicri*, 720 So. 2d 510 (Fla. 1998) (holding another provision permitting grandparent visitation when one or both parents are deceased, based solely on the best interest of the minor child, without first requiring proof of demonstrable harm to child, was unconstitutional); *Saul v. Brunetti*, 753 So. 2d 26 (Fla. 2000) (reaching the same conclusion with respect to a provision permitting grandparent visitation when the child was born out of wedlock). In *Richardson* our supreme court struck down a statute that permitted a court to "recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child," finding it a violation of parents' state constitutional right to rear their children. *Richardson*, 766 So. 2d at 1038. But in spite of this recognized right, it is not for us to question the wisdom of either the Kentucky grandparent visitation law or the Kentucky court orders granting it to the Grandmother. This is a consequence of the Full Faith and Credit Clause of the United States Constitution. Specifically, the supreme court has recognized that the out-of-state orders awarding grandparents child visitation are entitled to enforcement under the Full Faith and Credit Clause. *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217 (Fla. 2017). This brings us to the case before us.

B

The parents argue that the trial court committed several errors in dismissing their petition to modify the 2018 Kentucky visitation order. In spite of any concerns we may have about enforcement of Kentucky's grandparent visitation policy, or any errors the trial court may have committed, we cannot address the parents' claims because the court had no authority to modify the order. As such, we cannot say that the court erred in dismissing the parents' petition.

7

Section 61.516, Florida Statutes, reads as follows:

Except as otherwise provided in s. 61.517, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under s. 61.514(1)(a) or (b) and:

> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under s. 61.515 or that a court of this state would be a more convenient forum under s. 61.520; or

> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

A "child custody determination," for the purpose of section 61.516, is defined in section 61.503(3), Florida Statutes, as follows:

> "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, residential care, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. . . .

Because they provide for visitation with respect to a child, the Kentucky orders granting the Grandmother visitation constitute a "child custody determination" under section 61.516, which a court of this state may not modify without a statutory exception applying. The first exception noted, section 61.517, Florida Statutes—concerning temporary emergency jurisdiction—does not apply. The next exception available, described in subsection (1), does not apply because the Kentucky court neither determined that it no longer has jurisdiction nor that a court of this state would be a more convenient forum.

Finally, the applicability of subsection (2) depends on whether "the child, the child's parents, and any person acting as a parent do not presently reside in" Kentucky. "Person acting as a parent"

8

includes a person, other than a parent, who "[h]as been awarded a child-custody determination by a court." § 61.503(13)(b), Fla. Stat. Because the Kentucky order granting the Grandmother visitation constitutes a "child custody determination," the Grandmother is a "person acting as a parent" under section 61.516(2). And because the Grandmother lives in Kentucky, the subsection (2) exception does not apply. Because no exception to section 61.516's preclusion of modification exists, the Florida trial court here had no authority to grant the parents relief under their current petition in any event.[3]

We in turn also reject the trial court's conclusion to the contrary in its "Order on Motion for Exclusive Jurisdiction." That order indicated that "there is no person 'acting as a parent' in Kentucky as per Chapter 61.516(2) Fl. St. and Fl. St. 61.503(13)." As stated above, this conclusion is inaccurate, because the Grandmother is a person "acting as a parent," as section 61.503(13) defines that term. We note that, despite this error, the Order only grants Florida courts the right to enforce the Kentucky order, not to modify it (or in this case, to rescind it).[4]

In short, under section 61.516, the court was prohibited from modifying the Kentucky visitation order. For this reason, the court did not err in dismissing the petition for modification, albeit for a different reason than it announced. We are therefore obligated to affirm the order on review here.

AFFIRMED.

---

[3] *See also* § 61.529(2), Fla. Stat. ("A court of this state shall recognize and enforce but may not modify, except in accordance with ss. 61.514–61.523, a registered child custody determination of another state.").

[4] We further note that the court's statement in the Amended Final Judgment of Dissolution that it had authority to modify the grandparent visitation rights if the parents requested modification, was also inaccurate, as it likewise conflicts with section 61.516.

TANENBAUM, J., concurs; ROBERTS, J., dissents without opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Susan J. Silverman, Sarasota, for Appellants.

Linda A. Bailey of the Law Office of Linda A. Bailey, P.A., Tallahassee, for Appellee.